(798 P.2d 488)

No. 63,870

STATE OF KANSAS, *Appellee,* v. GILBERT MATSON, *Appellant.*

—

Opinion filed August 31, 1990.

*Reid T. Nelson,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Timothy J. Chambers,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, P.J., BRAZIL, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: Defendant Gilbert Matson has appealed from his convictions on three drug-related charges.

The evidence is not disputed that Matson was employed by "Gene's Machines," a California car dealership. It was Matson's job to buy used cars in Hutchinson, Kansas, send them to David White, Gene's mechanic in Hutchinson, for repair, and then take the cars to California to be sold for profit.

The Reno County police department had information that Matson was bringing methamphetamine from California for use in an illicit drug operation with David White and others in Hutchinson. On May 10, 1988, based on information that Matson was arriving from California by plane, law enforcement officers met the plane in Wichita. They observed Matson place a bag in the trunk of a car driven by a friend and drive toward Hutchinson. As the car entered Reno County, it was stopped by law enforcement officers, who found in the trunk a large quantity of pure methamphetamine.

After a jury trial, Matson was convicted on three drug related charges, conspiracy to sell methamphetamine, K.S.A. 21-3302, K.S.A. 65-4127b(b), possession of methamphetamine with intent to sell, K.S.A. 65-4127b(b), and possession of methamphetamine without a tax stamp, K.S.A. 79-5201 *et seq.*

Because Matson was a third-time felon, the court declared him to be a habitual criminal, enhanced the sentences, and ordered them to run consecutively with a resulting controlling term of 23 to 75 years. Matson timely appeals.

Matson first contends that the charge of possession of methamphetamine with intent to sell was necessarily proved when he was convicted on the conspiracy charge and, therefore, his conviction on the possession charge must be vacated as being an included crime.

The jury was instructed that in order to find Matson guilty of the conspiracy charge, the State must prove the following:

"1. That the defendant agreed with others to commit or assist in the commission of the crime of sale of methamphetamine;

"2. That the defendant did so agree with the intent that the crime of sale of methamphetamine be committed;

"3. That the defendant or any party to the agreement acted in furtherance of the agreement by possessing a quantity of methamphetamine with intent to sell; and

"4. That this act occurred on or about the 10th day of May, 1988, in Reno County, Kansas."

Matson maintains that the information as clarified by the instruction necessarily required the State to prove that he committed the requisite overt act of possessing methamphetamine with the intent to sell, and that this was the same act of possession

for which he was separately charged in count II of the information. Thus, he argues, the possession charge was the "included crime" under K.S.A. 21-3107(2)(d), and his conviction thereon must be vacated.

The State argues that the instructions required only possession of methamphetamine with intent to sell by any member of the conspiracy and not necessarily the defendant, that David White, a codefendant, was also convicted of possessing the drug with intent to sell, and that the two charges are separate and distinct offenses.

K.S.A. 21-3107(2) provides:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

. . . .

"(d) a crime necessarily proved if the crime charged were proved."

Cases considering the applicability of this statute have consistently interpreted it to prohibit prosecutions for "lesser included crimes." In *State v. Fike*, 243 Kan. 365, 367, 757 P.2d 724 (1988), the court, after considering the question at length, concluded that the "included crime" to which the proscription of the statute applies is a lesser crime or offense, *i.e.*, "a crime" which carries a lesser penalty than the penalty for the crime charged.

Possession of methamphetamine with intent to sell is a class C felony. Conspiracy to sell methamphetamine is a class E felony. The possession charge is not a lesser included crime. Therefore, section 21-3107(2) does not prohibit conviction on both offenses.

Matson also contends that the convictions are unconstitutionally multiplicitous. He did not raise this issue at trial, but he correctly notes that multiplicity may be raised on appeal if necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984). Since defendant was sentenced to consecutive sentences, the controlling term of his sentences will be significantly reduced if any one conviction is set aside. We will, therefore, consider this issue.

Matson, in effect, argues that the possession charge merged into the "broader crime" of conspiracy, and that the possession charge must, therefore, be vacated.

With limited exceptions not applicable here, the general rule is that a conspiracy to commit a crime is an offense separate and distinct from the crime that is the object of the conspiracy. *United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978). The rule is stated in 16 Am. Jur. 2d, Conspiracy § 5, p. 220, as follows:

"The general rule is that a conspiracy to commit a crime is an offense separate and distinct from the crime that is the object of the conspiracy. . . . Because the conspiracy is the crime and not its execution, it is punishable both where it fails in its object and where the intended crime is accomplished."

The double jeopardy clause of the United States Constitution, of course, protects defendants in criminal proceedings from multiple punishments for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976).

Multiplicity exists when the State attempts to use a single wrongful act as the basis for multiple charges. *State v. Garnes*, 229 Kan. 368, 372-73, 624 P.2d 448 (1981). In *State v. Hobson*, 234 Kan. 133, 137, 671 P.2d 1365 (1983), the court stated:

"In *Jarrell v. State*, 212 Kan. 171, 173, 510 P.2d 127 (1973), it was recognized that two or more separate convictions cannot be carved out of one criminal delinquency and where numerous charges are made, those which make up an integral part of another crime charged, in which the defendant was convicted, must be dismissed as duplicitous."

The test as to whether the substantive offense and the conspiracy to commit it constitute the same offense or are separate and distinct offenses depends upon whether one requires proof of an essential element which the other does not. *State v. Garnes*, 229 Kan. at 373; *State v. Hobson*, 234 Kan. 133, Syl. ¶ 1; *United States v. Kelley*, 545 F.2d 619, 624, *cert. denied* 430 U.S. 933 (1977).

The essence of a conspiracy charge is the agreement to commit the crime. Thus, to convict Matson on the conspiracy charge required proof of an agreement. No such agreement was required to convict on the possession charge. The two charges are, therefore, separate and distinct offenses, and we find no error in defendant's conviction on both charges.

Matson, for a second ground on appeal, contends that the trial court violated his right to a speedy trial under K.S.A. 22-3402.

The record shows that Matson was originally charged with all three counts in one case. At a preliminary hearing on May 31, 1988, the conspiracy count was dismissed for lack of probable cause. Matson was arraigned on the possession charge and the tax stamp charges on June 6, 1988. The conspiracy charge was refiled and defendant was arraigned on this charge on July 5, 1988. The cases were consolidated prior to trial, and trial ultimately commenced on January 17, 1989.

K.S.A. 22-3402(2) provides:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred and eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

Under subsection (3), the court may grant one continuance of not more than 30 days if it needs to because of scheduling problems.

The record shows that on October 3, 1988, the trial court granted a continuance because of a crowded docket and in order to allow Matson to consult with his attorney and to prepare for trial. Defendant's counsel argues that since he did not request the continuance, the time should not be charged to defendant. He concedes, however, that 30 days could be excused under the statute, which would extend the period to 210 days, but he maintains that the defendant is entitled to be discharged because he was not brought to trial until 224 days after his arraignment, which leaves 14 unexcused days.

The matter was originally set for trial on August 29, 1988. On August 5, 1988, however, Matson's first attorney was allowed to withdraw as counsel on the grounds that there had been a breakdown of communication with his client and that no attorney fees had been paid. Matson was ordered to obtain an attorney within 10 days.

On August 26, 1988, Matson appeared before the trial court without counsel. On August 30, 1988, the court appointed an attorney to represent Matson and the case was set over to October 3, 1988, for jury trial. On October 3, 1988, Matson and his counsel appeared before the trial court. Because of numerous

missed appointments by the defendant, appointed counsel had never seen defendant before that day. The court chastised the defendant for failing to keep in contact with his attorney and rescheduled the trial for January 9, 1989.

Although defendant's counsel objected to the continuance, it is obvious that it would have been error for the court to insist upon proceeding with the trial of defendant on October 3, 1988, as scheduled, when defendant's counsel had not yet been able to consult with his client. The trial, in addition to being continued to allow defense counsel to file motions, was clearly continued for defendant's benefit to allow him to meet with his counsel and prepare for trial.

Here, defendant failed to appear in court on August 5, 1988, to hear his first attorney's motion to withdraw, and failed to obtain new counsel within 10 days as ordered by the court. A new attorney was appointed for him on August 30, but defendant had not bothered to talk to him by October 3. The period of time between August 4 and October 3, a period of 59 days, is properly charged to the defendant because during this period of time the defendant hindered the progress of his own case by not participating in his defense. This leaves 166 days chargeable to the State, well within the time limitation imposed by the statute. The defendant was, therefore, tried within the time constraints established by K.S.A. 22-3402(2).

Finally, Matson claims that the tax on marijuana and controlled substances, K.S.A. 79-5201 *et seq.*, is in reality a criminal penalty, and as such it is an unconstitutional denial of due process under the Fourteenth Amendment. The State argues that the issue was not raised at trial and, therefore, should not be considered.

As a general rule, where constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review. *State v. Goss*, 245 Kan. 189, 193, 777 P.2d 781 (1989).

"However, if a newly asserted issue involves only a legal question arising on proved or admitted facts which will be finally determinative of the case, or if consideration is necessary to serve ends of justice or to prevent a denial of fundamental rights, an appellate court may consider the issue even though not considered by the trial court." *State v. Anderson*, 12 Kan. App. 2d 342, Syl. ¶ 1, 744 P.2d 143 (1987).

As noted above, the defendant was sentenced to consecutive terms; therefore, to serve the ends of justice, the constitutional issue will be considered.

Some constitutional questions about the Kansas drug tax were resolved in *State v. Durrant*, 244 Kan. 522, 769 P.2d 1174 (1989). The *Durrant* court held that the tax does not violate the Fifth Amendment privilege against self-incrimination. The basic principles for determining the constitutionality of a statute were set forth as follows:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity and, before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." 244 Kan. 522, Syl. ¶ 1.

Justice Holmes, speaking for the court, went on to say:

"While some have questioned the propriety of a governmental entity imposing a tax upon an illegal act, the United States Supreme Court has held that a tax may be imposed on an activity that is wholly or partially unlawful under state or federal statute. [Citations omitted.] In doing so, however, the government may not violate constitutional restrictions." 244 Kan. at 528.

The defendant argues that in enacting the statute, it was recognized by the legislature that dealers were unlikely to pay the tax, that little revenue would be raised thereby, and that the primary purpose of the tax was to further punish drug dealers.

As noted by Justice Holmes in *Durrant*, the United States Supreme Court has considered in a number of different circumstances whether a tax is, in fact, a penalty. In *Lipke v. Lederer*, 259 U.S. 557, 66 L. Ed. 2d 1061, 42 S. Ct. 549 (1922), the court considered a federal prohibition era statute which made the manufacture and sale of liquor illegal and imposed a tax on the " 'illegal manufacture [and] sale' " of liquor. The court stated:

"The mere use of the word 'tax' in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. [Citation omitted.] When by its very nature the imposition is a penalty, it must be so regarded. [Citation omitted.] Evidence of crime . . . is essential to assessment . . . [of the tax]. It lacks all the ordinary characteristics of a tax, whose primary function 'is to provide for the support of the government' and clearly involves the idea of punishment

for infraction of the law—the definite function of a penalty." *Lipke*, 259 U.S. at 561-62.

In more recent decisions, however, the Court has backed away from this strong position against such taxes. In *United States v. Sanchez*, 340 U.S. 42, 95 L. Ed. 47, 71 S. Ct. 108 (1950), the Court upheld a federal tax on marijuana. The statute levied a tax on "every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, prescribes, administers, or gives away marijuana." 340 U.S. at 43. Additional penalties were provided for failure to pay the tax.

The Court held that in enacting the statute, Congress had two objectives, namely, to raise revenue and at the same time to make it extremely difficult for persons to obtain the drug for illegal purposes. It said:

"It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed. [Citation omitted.] The principle applies even though the revenue obtained is obviously negligible [citation omitted].

. . . .

"The tax levied . . . is not conditioned upon the commission of a crime. The tax is on the transfer of marijuana to a person who has not paid the special tax and registered. Such a transfer is not made an unlawful act under the statute." *Sanchez*, 340 U.S. at 44-45.

The Supreme Court has essentially followed the same reasoning in subsequent cases in which the question has been considered. In two separate cases, it upheld the constitutionality of a federal statute, 26 U.S.C. § 3285 (1952) (now 26 U.S.C. § 4401 [1988]), which taxed gambling earnings. In both cases, it was argued that, because gambling was illegal, the tax was merely a penalty. The Court stated:

"It is conceded that a federal excise tax does not cease to be valid merely because it discourages or deters the activities taxed. Nor is the tax invalid because the revenue obtained is negligible. Appellee, however, argues that the sole purpose of the statute is to penalize only illegal gambling in the states through the guise of a tax measure. As with the above excise taxes which we have held to be valid, the instant tax has a regulatory effect. But regardless of its regulatory effect, the wagering tax produces revenue. As such it surpasses both the narcotics and firearms taxes which we have found valid." *United States v. Kahriger*, 345 U.S. 22, 28, 97 L. Ed. 754, 73 S. Ct. 510, *reh. denied* 345 U.S. 931 (1953).

See *Lewis v. United States*, 348 U.S. 419, 99 L. Ed. 475, 75 S. Ct. 415, *reh. denied* 349 U.S. 917 (1955).

Again, in *Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 41 L. Ed. 2d 132, 94 S. Ct. 2291 (1974), the court held that a 20 percent tax on privately operated parking lots is not a penalty even though it was designed to discourage operation of such lots.

Although the tax on marijuana considered by the Court in *Sanchez* was later repealed after it was found to be violative of the prohibition on self-incrimination (*Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 [1969]), the reasoning of the Court in *Sanchez* is persuasive here.

Although the minutes of the Kansas House and Senate Committees show that the primary purpose of the act was to combat drug usage, raising revenue was a motive that was definitely considered. The committee minutes reflect the following statement by Rep. Robert Miller: "The taxes would provide a way to tax part of the flourishing underground economy that is normally operating on a tax-free basis." Hearings on HB-2140 before the House Taxation Committee, 1987 Session. Other testimony before the committee reflects similar goals, including suggestions that the revenue collected be used not only to combat illegal drug usage but also for a program for the prevention, education, and rehabilitation of those adversely affected by the drug trade.

Because revenue collection is one of the objectives of the statute and because imposition of the tax does not expressly depend on the illegal nature of the sale or possession of marijuana, we hold that the statute is constitutionally valid under the United States Constitution.

Defendant also argues that the drug tax violates Article 11, § 5 of the Kansas Constitution, which provides: "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." However, Article 11, § 5 applies only to property taxes and not to excise taxes or licenses. *Farmers Union C.C.E. v. Director of Revenue*, 163 Kan. 266, 268, 181 P.2d 541 (1947). The drug tax does not violate this section of the Kansas Constitution.

Affirmed.