No. 65,306

STATE OF KANSAS, *Appellee*, v. THOMAS A. BERBERICH, *Appellant*.

(811 P.2d 1192)

Opinion filed May 24, 1991.

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Randy M. Hendershot*, assistant district attorney, argued the cause, and *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Thomas A. Berberich was convicted by a jury of: (1) possession of methamphetamine, K.S.A. 1988 Supp. 65-4127b(a)(2); (2) possession of drug paraphernalia, K.S.A. 65-4152; (3) possession of marijuana, K.S.A. 1988 Supp. 65-4127b(a)(3); and (4) possession of methamphetamine without affixing the official Kansas drug tax stamp, K.S.A. 79-5208. The trial court denied

Berberich's motion to dismiss the charge of possession of methamphetamine with intent to sell as an included offense of the violation of K.S.A. 79-5201 *et seq.*, the Kansas Drug Tax Act. Subsequent to his conviction, Berberich filed a motion to set aside his conviction, claiming that the Kansas Drug Tax Act violates the due process clause of the Fourteenth Amendment to the United States Constitution on the grounds the act is an unconstitutional penalty and not a tax. The trial court found the Kansas Drug Tax Act did not violate the Fourteenth Amendment right to due process. Berberich also filed a motion asking that the trial court declare the penalties of the Kansas Drug Tax Act violate the separation of powers doctrine. This motion was also denied.

The relevant facts are as follows: When Officer Scott Holladay went to a house to execute a search warrant, he saw Berberich arrive at the house and carry a duffel bag to the door. Officer Holladay intercepted Berberich at the door of the house and searched him. Beside the doorway officers found a paper sack and a black duffel bag. Inside the duffel bag officers found Deering scales, which are commonly used to weigh drugs, with powder residue on the interior; a box that contained a bag with razor blades, a package of paper folds, and an empty package for an insulin syringe; a brass bowl which could screw into a pipe for smoking marijuana; a white cardboard box containing four plastic baggies of marijuana; and a pillbox with two separate compartments containing six grams of white powder and four and one-half grams of yellow-brown powder later proven to be methamphetamine. Neither of the prohibited substances had the required tax stamps.

At trial, Berberich admitted the drugs in the duffel bag were his. He stated he purchased and repackaged the drugs only for his own use due to job pressure and personal problems.

Prior to instructing the jury, the trial court denied Berberich's motion to dismiss the charge of possession of methamphetamine with intent to sell as being an included offense of the charge of possession of methamphetamine without a drug tax. The trial court determined even though possession is a common element of both crimes, there are other elements in each offense which distinguish them. On appeal, Berberich claims that the possession

of methamphetamine is an included crime of the failure to pay the Kansas drug tax and the Kansas tax is an unconstitutional criminal penalty disguised as a tax and therefore violates the due process clause of the Fourteenth Amendment. It should be noted that on appeal the defense and the State argue the issue of whether possession of methamphetamine is an included crime of failure to pay the Kansas drug tax. However, the defendant was charged with, the jury was instructed on, and the defendant was convicted of a violation of K.S.A. 79-5208, possession of methamphetamine without affixing a Kansas drug tax stamp. It is this crime which we will consider in our discussion, not any civil penalty which could be imposed in another proceeding for failure to pay taxes.

## POSSESSION OF METHAMPHETAMINE AS AN INCLUDED CRIME OF POSSESSION OF METHAMPHETAMINE WITHOUT AFFIXING THE KANSAS DRUG TAX STAMP

The record reflects that Berberich's motion to dismiss the charge of possession of methamphetamine with the intent to sell as being an included offense in the charge of possession without affixing a drug tax stamp was denied by the trial court.

Although Berberich was charged with possession of methamphetamine with intent to sell pursuant to K.S.A. 1988 Supp. 65-4127b(b)(2), the jury found Berberich guilty of the lesser offense of possession of methamphetamine. The instruction on Count One stated:

"If you cannot agree that the defendant is guilty of possession of methamphetamine with intent to sell, you should then consider the lesser included offense of possession of methamphetamine.

"To establish this charge each of the following claims must be proved:

"1. That the defendant possessed a stimulant drug known as methamphetamine;

"2. That the defendant did so intentionally;

"3. That this act was done on or about the twelfth day of October, 1988, in Shawnee County, Kansas."

The instruction for Count Three read:

"The defendant is charged in Count 3 with the offense of possessing methamphetamine without having paid Kansas drug tax.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally possessed methamphetamine;

"2. That the methamphetamine weighed more than one gram;

"3. That the defendant intentionally did not affix an official drug tax stamp on methamphetamine in his possession;

"4. That this act occurred on or about the 12th day of October, 1988 in Shawnee County, Kansas."

K.S.A. 21-3107(2) provides:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an *included* crime, but not both. An *included* crime may be any of the following:

"(a) A lesser degree of the same crime;

"(b) an attempt to commit the crime charged;

"(c) an attempt to commit a lesser degree of the crime charged; or

"(d) *A crime necessarily proved if the crime charged were proved.*" (Emphasis added.)

In determining whether a lesser crime is a lesser included offense under K.S.A. 21-3107(2)(d), a two-step analysis or two-pronged test has been adopted. The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. If so, the lesser crime is a lesser included crime of the crime charged. Under the second prong of the test, even if the statutory elements of the lesser crime are not all included in the statutory elements of the crime charged, the lesser crime may still be a lesser included crime under K.S.A. 21-3107(2)(d) if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime. *State v. Fike*, 243 Kan. 365, Syl. ¶ 1, 757 P.2d 724 (1988).

Berberich asserts that under either test set out in *Fike*, the illegal possession offense is a lesser included offense of the drug tax act violation; therefore, he cannot be convicted of both crimes. Berberich claims the first prong of *Fike*, the elements test, reveals that illegal possession is an included crime of the drug tax act violation as each offense requires proof that he intentionally possessed methamphetamine. Berberich claims the second prong of *Fike*, the evidence test, would require the State to prove possession of the same methamphetamine for him to be convicted of either offense. We disagree with Berberich's analysis of K.S.A. 21-3107(2)(d).

Prior to the adoption of the Kansas Criminal Code in 1969, Kansas followed the traditional common-law rule on instructing

the jury on lesser included offenses, *i.e.*, the elements test. G.S. 1868, ch. 82, § 121 provided that upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto or of an attempt to commit the offense. G.S. 1868, ch. 82, § 122 stated that upon the trial of an indictment for a felony the defendant may be found guilty of any other felony or misdemeanor necessarily included in that with which he is charged in the indictment or information. When the Kansas Criminal Code was adopted, K.S.A. 21-3107(2)(a), (b), and (c) replaced the 1868 codification of the common law.

Regarding the lesser included offense, 3 Wright, Federal Practice and Procedure: Criminal 2d § 515 (1982) states:

"This doctrine developed at common law to aid the prosecution in cases where the proof failed to show some element of the crime charged. It can be beneficial to the defendant, however, since the jury may temper justice with mercy by acquitting defendant of the offense charged and finding him guilty of the lesser offense. If the evidence is such that the jury could rationally find defendant guilty of the lesser offense but not of the greater, an instruction on the lesser offense must be given.

"One offense is necessarily included in another if it is impossible to commit the greater without also having committed the lesser. Thus murder includes such lesser offenses as second-degree murder, manslaughter, and negligent homicide. Robbery necessarily includes larceny, and assault with intent to rob. Rape necessarily includes assault with intent to rape. Assault with a dangerous weapon includes simple assault. Theft of property in excess of $100 includes the lesser wrong of theft of property of value not exceeding $100. In each of these instances some of the elements of the greater crime charged are in themselves enough to constitute the lesser crime.

"The rule also provides in terms that the jury may find the defendant guilty of an attempt to commit the offense charged—or an offense necessarily included therein—if an attempt is an offense. Although this is spelled out in the rule, in principle it seems indistinguishable from the general case of an offense necessarily included.

"The lesser offense doctrine does not apply if the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses, and the lesser offense is, therefore, completely encompassed by the greater. It is thought that to hold otherwise would invite the jury to pick between the two offenses in order to determine the punishment to be imposed, a duty traditionally left to the judge.

"The doctrine also does not apply if some element is required for the lesser offense but not for the greater. In this situation two different crimes are involved, and the lesser is not necessarily included in the greater, since

it would be possible to commit the greater without also having committed the lesser.

"Conviction of a lesser-included offense is an implied acquittal of the greater offense. If the defendant has the conviction vacated on appeal, he cannot thereafter be tried for the greater offense."

Berberich cites *State v. Adams*, 242 Kan. 20, 744 P.2d 833 (1987), for authority that possession of methamphetamine is an included offense of the drug tax act violation and that a conviction of a drug tax count bars a conviction of possession of methamphetamine. In *State v. Adams* we noted that by proving the charge of involuntary manslaughter, the State necessarily had to prove the charge of driving under the influence; therefore, the conviction for the underlying misdemeanor, driving under the influence, had to be set aside. K.S.A. 21-3107(2)(d) incorporates the common-law doctrine of merger, which doctrine was involved in *Adams*.

"Where commission of one crime necessarily involves commission of a second, the offense so involved is said to be merged in the offense of which it is a part. However, when one of the two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for both, though both are, in a sense, successive steps in the same transaction. Thus, the doctrine of merger does not apply where the offenses are separate and distinct, but only where the identical criminal act constitutes both offenses. The merger doctrine had its origin in the fact that, at the early common law, persons charged with misdemeanor were entitled to certain privileges not available to persons charged with felony. Since this situation no longer obtains and the distinction, if any, runs in the opposite direction, the original reason for the rule has disappeared and thus the conventional merger doctrine has become disfavored and either confined within narrow limits or abolished altogether." 21 Am. Jur. 2d, Criminal Law § 21. When the underlying crime merges with the offense charged, the trial judge does not instruct the jury that the accused can be convicted of the underlying crime.

When the legislature enacted the Kansas Code of Criminal Procedure in 1969, it modified and enlarged the common law duty to instruct on lesser included offenses (the elements test)

by adding subsection (d) to K.S.A. 21-3107(2). In addition to the common-law elements test, judges are now required to also instruct the jury on lesser included offenses when there is evidence submitted to the jury of a crime necessarily proved if the crime charged were proved. Therefore, all cases interpreting K.S.A. 21-3107 decided prior to 1969 are not applicable to the second test of K.S.A. 21-3107(2)(d).

Berberich asks this court to overrule the Court of Appeals' holding in *State v. Matson*, 14 Kan. App. 2d 632, Syl. ¶ 1.

In *Matson*, the defendant argued that the charge of possession of methamphetamine with the intent to sell was necessarily proved when he was convicted of the charge of conspiracy to sell methamphetamine; therefore, his conviction on the possession charge must be vacated as being an included crime. The Court of Appeals found that cases considering the applicability of K.S.A. 21-3107(2) have consistently interpreted it to prohibit prosecution for *"lesser included crimes"* and found *State v. Fike*, 243 Kan. at 367, holds that the " *'included crime'* to which the proscription of the statute applies is a lesser crime or offense, *i.e.*, *'a crime'* which carries a lesser penalty than the penalty for the crime charged." 14 Kan. App. 2d at 634. The Court of Appeals reasoned that since possession of methamphetamine was a class C felony and conspiracy was a class E felony, and the possession charge was not a lesser included crime, the defendant could be convicted of both offenses. 14 Kan. App. 2d at 634.

Berberich asserts that the Court of Appeals' decision in *Matson* eliminated included offenses under 21-3107(2)(d) and violates the legislative intent prohibiting more than one conviction based upon a single act. We disagree with Berberich's statement. He misreads the Court of Appeals' opinion, which merely defined "lesser included crime" and did not limit the scope of K.S.A. 21-3107(2)(d). K.S.A. 21-3107(2) does not require an *included* offense to be a *lesser* degree of the same crime having a lesser penalty. In *State v. Anthony*, 242 Kan. 493, 497, 749 P.2d 37 (1988), we determined that possession of cocaine is an included offense of possession of cocaine with intent to sell. At the time *Anthony* was decided, both offenses had the same penalty.

"The general rule is that a conspiracy to commit a crime is an offense separate and distinct from the crime that is the object of the conspiracy,

and the legal consequences of a conspiracy to commit a crime are separate and distinct from the commission of the crime itself. Because the conspiracy is the crime and not its execution, it is punishable both where it fails in its object and where the intended crime is accomplished." 16 Am. Jur. 2d, Conspiracy § 5. In *Matson*, the Court of Appeals followed the general rule that conspiracy is a separate crime from the object of the conspiracy.

K.S.A. 21-3107(3) does not always require the trial court to give a full range of lesser included offense instructions when two or more separate offenses are committed during the same transaction. The merger doctrine previously discussed is one example. Another example is felony murder, K.S.A. 1990 Supp. 21-3401. When a death occurs during the commission of a felony, the felonious conduct is tantamount to the elements of deliberation and premeditation required for first-degree murder. *State v. Rider, Edens & Lemons*, 229 Kan. 394, 625 P.2d 425 (1981). The crime of first-degree murder resulting from the perpetration of a separate and distinct felony which is inherently dangerous to human life is a separate and distinct statutory crime from that constituting the underlying felony and a prosecution for both crimes does not violate the prohibition against double jeopardy as proscribed by the Fifth Amendment to the United States Constitution. *State v. Crump*, 232 Kan. 265, Syl. ¶ 4, 654 P.2d 922 (1982).

A third example is burglary, K.S.A. 1990 Supp. 21-3715. Burglary is knowingly and without authority entering into or remaining within a type of structure described in the statute with the intent to commit a felony or theft therein. An individual must have the intent to commit the underlying felony or theft to be convicted of the burglary. There is no constitutional prohibition to a conviction of both the burglary and the underlying felony or theft.

The same is true for the crime of possession of a controlled substance without affixing the tax stamp and the offense of possession of marijuana or a controlled substance. The Kansas Drug Tax Act provides "a dealer distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a crime and, *upon conviction,* may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000 or both." K.S.A.

79-5208. A violation of K.S.A. 79-5208 for possession of a controlled substance without affixing the appropriate stamps showing payment of the tax is a separate and distinct offense from possession of marijuana or a controlled substance and one is not an included offense of the other.

CONSTITUTIONALITY OF KANSAS DRUG TAX ACT

Subsequent to the district court determination that the Kansas Drug Tax Act did not violate the defendant's Fourteenth Amendment right to due process, the Court of Appeals in *State v. Matson*, 14 Kan. App. 2d 632, 798 P.2d 488 (1990), determined K.S.A. 79-5201 *et seq.*, which imposes a tax on marijuana and controlled substances, does not violate the due process provisions of the Fourteenth Amendment and is constitutionally valid. Berberich requests we overrule *Matson*, arguing the Kansas Drug Tax is in reality a criminal penalty and as such is an unconstitutional denial of due process under the Fourteenth Amendment.

K.S.A. 79-5201 *et seq.* was passed by the legislature in 1987 and became effective July 1 the same year. The relevant provisions of the act are summarized: K.S.A. 1990 Supp. 79-5201 defines marijuana and controlled substances by reference to the appropriate subsections of K.S.A. 65-4101. A dealer is defined by reference to minimum amounts of drugs involved and the manufacture, production, shipping, transportation, importation, acquisition, or possession when done in violation of Kansas law. K.S.A. 79-5210 exempts from taxation doctors, hospitals, pharmacists, and others legally possessing the specified substances. K.S.A. 1990 Supp. 79-5202 provides for the imposition of the tax and sets the rate for taxation. K.S.A. 79-5203 provides for the administration of the tax by the director of taxation and requires certain forms to be completed and filed at the time of payment of the tax.

K.S.A. 1990 Supp. 79-5204 prohibits a dealer from possessing the marijuana or controlled substance unless the tax has been paid. It provides for the issuance of the tax stamps, labels; or other official indicia evidencing payment of the tax and directs the usage of the tax stamps, labels, or indicia. Subsection (b) of 79-5204 states: "Any person may purchase any such stamp, label or other indicia without disclosing such person's identity." K.S.A.

1990 Supp. 79-5205 sets forth the procedures for assessing the tax by jeopardy assessment and authorizes collection of the tax in any manner provided in article 32 of chapter 79 of the Kansas Statutes Annotated. The director of taxation is to assess a tax based on personal knowledge or information; inform the taxpayer of the amount of tax, penalties, and interest; demand immediate payment of that amount; and, if payment is not immediately made, collect the tax, penalties, and interest as provided in article 32 of chapter 79 of the Kansas Statutes Annotated. Within 15 days from the date of mailing of the notice, the taxpayer may submit a written request for a hearing. The burden is upon the taxpayer to show the incorrectness or invalidity of the assessment, which is presumed to be valid. K.S.A. 1990 Supp. 79-5205.

K.S.A. 79-5208 sets out both the civil and criminal liabilities and penalties. A civil penalty of 100% of the original tax can be imposed on a delinquent taxpayer. If a dealer is convicted of a criminal offense for distributing or possessing a prohibited substance without affixing a tax stamp, a penalty of imprisonment for not more than five years or payment of a fine of not more than $10,000, or both, can be imposed. K.S.A. 79-5208. A person charged with possession without affixing the tax stamp is provided the protection of a criminal trial.

Berberich asserts the legislature when enacting the law recognized that dealers were unlikely to pay the tax, little revenue would be raised thereby, and the primary purpose of the tax would be to further punish drug dealers. Berberich argues although the legislative history indicates revenue collection is a motive for the act, the real intent is to make the tax a punishment.

" 'The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done.' " *State v. Durrant*, 244 Kan. 522, 526, 769 P.2d 1174, *cert. denied* _____ U.S._____ , 106 L. Ed. 2d 600 (1989) (quoting *Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, Syl. ¶ 1, 732 P.2d 710 [1987]. The burden of proof is on the party challenging the constitutionality of the statute. *Durrant*, 244 Kan. at 526.

In *State v. Durrant*, we found that K.S.A. 79-5201 *et seq.* does not violate the Fifth Amendment prohibition against self-incrim-

ination and is not unconstitutional on such grounds. Although this is a tax on an illegal activity, Justice Holmes, speaking for the *Durrant* court, stated:

"While some have questioned the propriety of a government entity imposing a tax upon an illegal act, the United States Supreme Court has held that a tax may be imposed on an activity that is wholly or partially unlawful under state or federal statute. [Citation omitted.] In doing so, however, the government may not violate constitutional restrictions . . . ." 244 Kan. at 528.

The Court of Appeals in *Matson*, after reviewing our decision in *Durrant*, stated:

"[T]he United States Supreme Court has considered in a number of different circumstances whether a tax is, in fact, a penalty. In *Lipke v. Lederer*, 259 U.S. 557, 66 L. Ed. 2d 1061, 42 S. Ct. 549 (1922), the court considered a federal prohibition era statute which made the manufacture and sale of liquor illegal and imposed a tax on the " 'illegal manufacture [and] sale' " of liquor. The court stated:

'The mere use of the word "tax" in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. [Citation omitted.] When by its very nature the imposition is a penalty, it must be so regarded. [Citation omitted.] Evidence of crime . . . is essential to assessment . . . [of the tax]. It lacks all the ordinary characteristics of a tax, whose primary function "is to provide for the support of the government" and clearly involves the idea of punishment for infraction of the law—the definite function of a penalty.' *Lipke*, 259 U.S. at 561-62.

"In more recent decisions, however, the Court has backed away from this strong position against such taxes. In *United States v. Sanchez*, 340 U.S. 42, 95 L. Ed. 2d 47, 71 S. Ct. 108 (1950), the Court upheld a federal tax on marijuana. The statute levied a tax on 'every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, prescribes, administers, or gives away marijuana.' 340 U.S. at 43. Additional penalties were provided for failure to pay the tax.

"The Court held that in enacting the statute, Congress had two objectives, namely, to raise revenue and at the same time to make it extremely difficult for persons to obtain the drug for illegal purposes. It said:

'It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed. [Citation omitted.] The principle applies even though the revenue obtained is obviously negligible [citation omitted].

. . . .

'The tax levied . . . is not conditioned upon the commission of a crime. The tax is on the transfer of marijuana·to a person who has not

paid the special tax and registered. Such a transfer is not made an unlawful act under the statute.' *Sanchez*, 340 U.S. at 44-45.

"The Supreme Court has essentially followed the same reasoning in subsequent cases in which the question has been considered. In two separate cases, it upheld the constitutionality of a federal statute, 26 U.S.C. § 3285 (1952) (now 26 U.S.C. § 4401 [1988]), which taxed gambling earnings. In both cases, it was argued that, because gambling was illegal, the tax was merely a penalty. The Court stated:

'It is conceded that a federal excise tax does not cease to be valid merely because it discourages or deters the activities taxed. Nor is the tax invalid because the revenue obtained is negligible. Appellee, however, argues that the sole purpose of the statute is to penalize only illegal gambling in the states through the guise of a tax measure. As with the above excise taxes which we have held to be valid, the instant tax has a regulatory effect. But regardless of its regulatory effect, the wagering tax produces revenue. As such it surpasses both the narcotics and firearms taxes which we have found valid.' *United States v. Kahriger*, 345 U.S. 22, 28, 97 L. Ed. 754, 73 S. Ct. 510, *reh. denied* 345 U.S. 931 (1953).

See *Lewis v. United States*, 348 U.S. 419, 99 L. Ed. 475, 75 S. Ct. 415, *reh. denied* 349 U.S. 917 (1955).

"Again, in *Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 41 L. Ed. 2d 132, 94 S. Ct. 2291 (1974), the court held that a 20 percent tax on privately operated parking lots is not a penalty even though it was designed to discourage operation of such lots.

"Although the tax on marijuana considered by the Court in *Sanchez* was later repealed after it was found to be violative of the prohibition on self-incrimination (*Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 [1969]), the reasoning of the Court in *Sanchez* is persuasive here.

"Although the minutes of the Kansas House and Senate Committees show that the primary purpose of the act was to combat drug usage, raising revenue was a motive that was definitely considered. The committee minutes reflect the following statement by Rep. Robert Miller: 'The taxes would provide a way to tax part of the flourishing underground economy that is normally operating on a tax-free basis.' Hearings on HB-2140 before the House Taxation Committee, 1987 Session. Other testimony before the committee reflects similar goals, including suggestions that the revenue collected be used not only to combat illegal drug usage but also for a program for the prevention, education, and rehabilitation of those adversely affected by the drug trade.

"Because revenue collection is one of the objectives of the statute and because imposition of the tax does not expressly depend on the illegal nature of the sale or possession of marijuana, we hold that the statute is constitutionally valid under the United States Constitution.

"Defendant also argues that the drug tax violates Article 11, § 5 of the Kansas Constitution, which provides: 'No tax shall be levied except in pur-

suance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied.' However, Article 11, § 5 applies only to property taxes and not to excise taxes or licenses. *Farmers Union C.C.E. v. Director of Revenue*, 163 Kan. 266, 268, 181 P.2d 541 (1947). The drug tax does not violate this section of the Kansas Constitution." 14 Kan. App. 2d at 638-40.

In *United States v. Sanchez*, 340 U.S. 42, 95 L. Ed. 47, 71 S. Ct. 108 (1950), the United States Supreme Court held that the tax imposed by § 2590(a)(2) of the Internal Revenue Code (now repealed) of $100 per ounce on all transfers of marijuana to any person who has not paid the special tax and registered under §§ 2590 and 2591 of the Code was not invalid, despite the regulatory effect and the close resemblance to a penalty, merely because Congress, in enacting the tax statute, had the objective, in addition to raising revenue, to render extremely difficult the acquisition of the drug by persons who so desire for illicit uses and to develop adequate means of publicizing dealing in the drug in order to tax and control the traffic effectively. The civil character of the tax thus imposed is not altered by its severity in relation to the tax assessed. A tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activity taxed, even though the revenue obtained is obviously negligible or the revenue purpose of the tax is secondary. Even though the transferor becomes liable for a tax imposed upon the transfer of marijuana if the transferee fails to pay, the tax is a civil rather than a criminal sanction where the transfer is not made unlawful by the taxing statute, particularly where it provides a civil procedure for collection, thus indicating an intention of Congress that the tax be treated as such, and the Government seeks to collect the levy by a judicial proceeding with its attendant safeguards.

We note that other states have found similar drug tax statutes constitutional. The Minnesota Supreme Court found its drug tax statute did not violate the right against self-incrimination or procedural and substantive due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. *Sisson v. Triplett*, 428 N.W.2d 565 (Minn. 1988). The Minnesota Supreme Court found due process was provided under the act despite the fact that seizure of property could occur before

à hearing where an opportunity for the ultimate judicial determination of liability is provided. The Minnesota Supreme Court based its decision on *Commissioner v. Shapiro*, 424 U.S. 614, 47 L. Ed. 2d 278, 96 S. Ct. 1062 (1976), finding the safeguards necessary for due process notice and hearing were provided and that mere postponement of the hearing until after the seizure was not a denial of due process if there is an adequate opportunity ultimately for judicial determination. It noted that the act makes clear the standards for determining who is a dealer and what controlled substance is subject to tax, and thus does not violate state or federal guarantees of substantive due process, even though the act allows assessment of tax based on the Commissioner of Internal Revenue's personal knowledge or information.

In *Harris v. State, Dept. of Revenue*, 563 So. 2d 97 (Fla. Dist. App. 1990), the Florida Court of Appeals upheld the constitutionality of Fla. Stat. § 212.0505 (1987), which provided for a drug tax similar to that of Kansas. Like Berberich, Harris contended that the Florida statute was unconstitutional because it imposed an improper penalty or fine and not a tax. The Florida Court of Appeals reviewed *United States v. Sanchez*, 340 U.S. 42, found *Sanchez* controlling, and upheld the constitutionality of the act.

Berberich relies on a South Dakota Supreme Court decision, *State v. Roberts*, 384 N.W.2d 688 (S.D. 1986), which found the State's statutory luxury tax on controlled substances violated the Fifth Amendment. Unlike the Kansas statute where the tax information cannot be released to law enforcement officials, the South Dakota statute allowed tax information acquired by the Secretary of Revenue to be released to law enforcement officials. The South Dakota court found that such a release of information creates a real and appreciable risk of self-incrimination prohibited by *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969). Since *Roberts* was decided exclusively on Fifth Amendment privileges against self-incrimination grounds and is not similar to our statute, this decision is not applicable.

The Utah Court of Appeals in *State v. Davis*, 787 P.2d 517 (Utah App. 1990), cited this court's decision in *State v. Durrant*, 244 Kan. 522, and found that the Utah drug stamp act was broad enough to provide the protections required by the Fifth Amend-

ment and upheld the constitutionality of that statute. The *Davis* court also found the defendant did not have standing to make a constitutional vagueness challenge under the due process clause of the federal and Utah constitutions since he did not pay the tax and receive the stamps. The *Davis* court said that even if the defendant had standing to assert the vagueness of the statute, his claim had no merit as the law imposes criminal sanctions for the failure to affix stamps to the controlled substances. The act placed those who deal in controlled substances on notice that their failure to place stamps on the controlled substance will result in prosecution.

The Kansas Drug Tax Act, K.S.A. 79-5201 *et seq.*, which imposes a tax on marijuana and controlled substances, does not violate due process provisions of the Fourteenth Amendment and is constitutionally valid.

Affirmed.

HOLMES, C.J., concurring in the result.