The Honorable Kay O'Connor State Senator, 9th District 1101 N. Curtis Olathe, Kansas 66061
Dear Senator O'Connor:
You request our opinion regarding whether monies raised through a bistate sales tax could be used to pay STAR bonds issued by the Unified Government of Wyandotte County/Kansas City, Kansas. The electors of Johnson and Wyandotte Counties in Kansas and Clay, Jackson and Platte Counties in Missouri are casting votes on a ballot question that would allow the levying of a retailers' sales tax of one-fourth of one cent in the counties in which the question is approved. The retailers' sales tax is commonly referred to as Bistate II. The monies that would be raised through Bistate II are dedicated to metropolitan and local arts and cultural organizations, facilities and activities and to sports facilities. Some information provided by sources other than election officials indicates that the monies could be used to pay STAR bonds that were issued prior to the Bistate II question being submitted to the electorate. You request our opinion in order to clarify whether this is actually permissible.
Attorney General Opinion No. 96-72 provides relevant background information:
 "The Kansas and Missouri metropolitan culture district compact was approved by congress on October 22, 1994 (P.L. 103-390) and provides a mechanism for certain counties in Kansas and Missouri to cooperate in improving their cultural facilities, coordinating the services of their cultural organizations, enhancing the cultural activities of their citizens and achieving financial support for those activities. (The Missouri counterpart is found at RsMo § 70.500.) In order to create the metropolitan culture district (district) the board of county commissioners of both Johnson county, Kansas and Jackson county, Missouri must adopt a resolution authorizing a county-wide retailers' sales tax. The resolution is then submitted to the electorate. Additional counties in Kansas and Missouri may join the district if such counties are contiguous to one or more of the counties which comprise the district and are located within 60 miles of Johnson and Jackson counties. If the electorate approves the resolution, the tax is levied by the county and collected by the state director of taxation who credits the funds to the metropolitan culture district retailers' tax fund in the state treasury. The funds are then remitted to the respective county treasurer and appropriated by the county to the metropolitan culture commission (commission). The district is governed by the commission which is a body corporate and politic composed of resident electors of both states. (The commission's powers are listed in article VI at K.S.A. 1995 Supp. 12-2536 and RsMo § 70.500.) The compact continues until either state repeals its statute, notifies the other state and pays the obligations of the commission."[1]
Section 5 of Article 11 of the Kansas Constitution states that "[n]o tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." This provision, however, applies to property taxes, not excise taxes.[2] "Because a sales tax is a governmental charge for the privilege of acquiring property, a retailers' sales tax is more in line with an excise tax. . . ."[3] Section 5 of Article 11 of the Constitution does not apply to the monies raised through Bistate II.
We then look to statutory provisions to determine whether there are restrictions on the use of monies that are raised through Bistate II.
The procedure for collecting a bistate retailers' sales tax is set forth in K.S.A. 12-2539.
 "Upon receipt of a certified copy of a resolution authorizing the levy of a countywide retailers' sales tax pursuant to this section, the state director of taxation shall cause such tax to be collected within and outside the boundaries of such county at the same time and in the same manner provided for the collection of the state retailers' sales tax. All moneys collected by the director of taxation under the provisions of this section shall be remitted to the state treasurer in accordance with the provisions of K.S.A. 75-4215, and amendments thereto. Upon receipt of each such remittance, the state treasurer shall deposit the entire amount in the state treasury to the credit of the metropolitan culture district retailers' sales tax fund which fund is hereby established in the state treasury. . . .
 "(b) All revenue received by any county treasurer from a countywide retailers' sales tax imposed pursuant to this section shall be appropriated by the county to the metropolitan culture district commission within 60 days of receipt of the funds by the county for expenditure by the commission pursuant to and in accordance with the provisions of the Kansas and Missouri metropolitan culture district compact. . . ."[4]
The Kansas and Missouri Metropolitan Culture District Compact is set forth in K.S.A. 12-2536. The purpose for the Compact is to "achieve solid financial support for . . . cultural facilities, organizations and activities. . . ."[5] These terms are defined in the Compact.
 "(c) 'Cultural activities' means sports or activities which contribute to or enhance the aesthetic, artistic, historical, intellectual or social development or appreciation of members of the general public.
 "(d) 'Cultural organizations' means nonprofit and tax exempt social, civic or community organizations and associations which are dedicated to the development, provision, operation, supervision, promotion or support of cultural activities in which members of the general public may engage or participate.
 "(e) 'Cultural facilities' means facilities operated or used for sports or participation or engagement in cultural activities by members of the general public."[6]
The retailers' sales tax may be levied only after receiving approval from the electors of the county.[7] The question to be submitted to the electors must be substantially in the form set out in K.S.A. 12-2536
Article IV(c)(2). The form expressly states that the retailers' sales tax is to "be levied and collected . . . for the support of cultural facilities and organizations within the district." The ballot may include additional language that describes the uses or allocations of the retailers' sales tax monies.[8]
The question to be voted on in authorizing Bistate II includes such additional language.
 "The revenues collected annually from this tax shall be allocated, administered, and disbursed by the Bistate Commission in the manner and for the purposes described below, which purposes may include the payment of principal of, interest on and financing costs with respect to bonds issued or indebtedness incurred by other public entities in support of the sports facilities projects specified below.
 "Arts and Culture Share. One-half of all revenues collected annually from this proposed Bistate Metropolitan District tax shall be dedicated to metropolitan and local arts and cultural organizations, facilities and activities (exclusive of sports), including those that contribute to or enhance public appreciation of and access to arts and cultural amenities and activities, and shall be further allocated as follows:
 "(a) In each of the first four years of the tax, $12,500,000 from the Arts and Culture Share, aggregating $50,000,000 in total, shall be allocated for the Metropolitan Kansas City Performing Arts Center, Inc. to be used by it, in conjunction with other adequate private and public funds, to construct, furnish and equip the Performing Arts Center to be located in downtown Kansas City, Missouri.
 "(b) The remaining annual revenues from the Arts and Culture Share shall be divided as follows:
 "(i) Fifty percent (50%) shall be allocated to support, enhance and sustain those regional arts and cultural organizations, facilities and activities serving the Bistate Metropolitan District as are approved by the Bistate Commission upon the recommendations of its Advisory Committee, and
 "(ii) Fifty percent (50%) shall be allocated as follows and used to support, enhance and sustain those arts and cultural organizations, facilities and activities serving a Participating County as are approved by the Bistate Commission upon the recommendations of its Advisory Committee and those of a Citizens Advisory Committee for each Participating County established pursuant to guidelines articulated by the Bistate Commission:
 "(x) In each of the first ten years of the tax, $5,000,000 shall be allocated to construct, furnish and equip arts and cultural facilities, an aggregate of $25,000,000 of which shall be expended within one or more of the Participating Counties in Kansas and an aggregate of $25,000,000 of which shall be expended within one or more of the Participating Counties in Missouri, and
 "(y) The remaining annual revenues from this portion of the Arts and Culture Share shall be allocated among the Participating Counties on a pro rata basis according to the percentage of annual total revenues collected from each Participating County.
 "Sports Facilities Share. One-half of all revenues collected annually from this proposed Bistate Metropolitan District tax shall be dedicated to sports facilities and further allocated as follows:
 "(a) One-half of the Sports Facilities Share shall be used by the Bistate Commission, upon the recommendations of a Metropolitan Stadium Improvements Board ('Board') established by the Bistate Commission and composed of representatives from the participating counties, to provide project funding in an amount not to exceed $180,000,000 plus related debt service and financing costs, to be used in conjunction with other private and public funds to renovate, remodel, expand, upgrade, furnish and equip Arrowhead Stadium and adjacent supporting facilities at the Truman Sports Complex in Jackson County, Missouri, and
 "(b) One-half of the Sports Facilities Share shall be used by the Bistate Commission, upon the recommendations of the Board, to provide project funding in an amount not to exceed $180,000,000 plus related debt service and financing costs, to be used in conjunction with other private and public funds to renovate, remodel, expand, upgrade, furnish and equip Kauffman Stadium and adjacent supporting facilities at the Truman Sports Complex in Jackson County, Missouri.
 "Commencement and Expiration of Tax. Collection of this proposed retail sales tax of one-fourth (1/4) of one cent shall commence on the first day of the second calendar quarter following voter approval as required herein. This tax shall terminate at the end of the calendar quarter as determined by the Bistate Commission during which the total amount of revenue collected pursuant to this tax is adequate to provide for the earliest repayment of principal of and interest on bonds issued in an initial principal amount sufficient to provide project funding in an amount not to exceed $360,000,000, and related financing costs, for the sports facilities described above."[9]
The monies raised through Bistate II can be used only for those purposes enunciated by the Bistate Commission and approved by the electors.[10]
The Sports Facilities Share is dedicated to paying the costs of renovations and improvements to Arrowhead Stadium and Kaufman Stadium. A portion of the Arts and Culture Share is allocated to the construction, furnishing and equipping of the Metropolitan Kansas City Performing Arts Center. Another $25,000,000 of the Arts and Culture Share is to "be expended within one or more of the Participating Counties in Missouri." These portions clearly may not be used to pay STAR bonds that have been issued by the Unified Government of Wyandotte County/Kansas City, Kansas.
The remaining monies raised through Bistate II are distributed in accordance with paragraph (b) of the ballot question. The Arts and Culture Share may not be used to pay the costs of sports organizations, facilities and activities. Fifty percent of the Arts and Culture Share is to "be allocated to support, enhance and sustain those regional arts and cultural organizations, facilities and activities serving the Bistate Metropolitan District as are approved by the Bistate Commission upon the recommendations of its Advisory Committee. . . ." The remaining $25,000,000 is to "be expended within one or more of the Participating Counties in Kansas" and "used to support, enhance and sustain those arts and cultural organizations, facilities and activities serving a Participating County as are approved by the Bistate Commission upon the recommendations of its Advisory Committee and those of a Citizens Advisory Committee for each Participating County. . . ." The monies raised through Bistate II may not be used to pay STAR bonds issued by the Unified Government of Wyandotte County/Kansas City, Kansas unless: 1) the projects paid by such bonds are deemed to be arts and cultural activities, facilities and organizations; and 2) the activities, facilities and organizations are approved by the Bistate Commission upon one of the annual recommendations of the Advisory Committee.[11] In the case of the $25,000,000 allocation and the prorata share, the recommendation of the Citizens Advisory Committee[12] of each Participating County is also required.
Sincerely,
PHILL KLINE Attorney General of Kansas
Richard D. Smith Assistant Attorney General
PK:JLM:RDS:jm
[1] Internal citations omitted.
[2] Farmers Union C.C.E. v. Director of Revenue, 163 Kan. 266, 268
(1947); State v. Matson, 14 Kan.App.2d 632, 640 (1990).
[3] Attorney General Opinion No. 2000-52.
[4] K.S.A. 12-2539 (emphasis added).
[5] K.S.A. 12-2536 Article II. See also K.S.A. 12-2536 Article IV ("the levy of a tax for the purpose of contributing to the financial support of the district").
[6] K.S.A. 12-2536 Article III.
[7] K.S.A. 12-2536 Article IV(c)(1).
[8] Id.
[9] Johnson County Election Commissioner's Office, Bistate Ballot Question, November 2, 2004.
[10] See Attorney General Opinion No. 2000-52.
[11] The Advisory Committee is appointed by the Bistate Commission and is "composed of members of the general public consisting of an equal number of persons from both the states of Kansas and Missouri who have demonstrated interest, expertise, knowledge or experience in cultural organizations or activities." K.S.A. 12-2536 Article VI(g). The Advisory Committee makes annual recommendations to the Bistate Commission. Id.
[12] The Citizens Advisory Committee is not recognized by state statute.