(912 P.2d 187)
No. 72,952

In the Matter of the Appeal of THOMAS BURRELL.

Opinion filed March 1, 1996.

*Brian Cox*, of Kansas Department of Revenue, for the appellant.

*Jack Focht*, of Focht, Hughey & Calvert, of Wichita, for the appellee.

Before MARQUARDT, P.J., LEWIS, J., and NELSON E. TOBUREN, District Judge, assigned.

LEWIS, J.: Thomas Burrell (taxpayer) was arrested and charged with possession of marijuana. He ultimately pled guilty to attempted possession of marijuana and unlawfully arranging a sale or purchase of marijuana using a communications facility. The taxpayer had been originally charged with failure to affix a tax stamp. The tax stamp violation was dismissed following a preliminary hearing.

After the criminal charges had been disposed of, the Kansas Department of Revenue (KDR) issued an assessment against the taxpayer, pursuant to K.S.A. 1995 Supp. 79-5202 for taxes and pen-

alties in the amount of $17,024. The taxes and penalties assessed were assessed as a result of the taxpayer's alleged possession of marijuana. The taxpayer appealed this assessment to the Director of Taxation (Director). A hearing was held by the Director in which the assessment was upheld but the amount due was amended to $16,779. The decision of the KDR was appealed to the Kansas Board of Tax Appeals (BOTA), which reversed the assessment and held in favor of the taxpayer. The KDR appeals from the decision of the BOTA in favor of the taxpayer.

This is a first impression case dealing with whether the taxpayer had sufficient possession of the marijuana to trigger application of the Kansas Drug Tax Act (Act), K.S.A. 79-5201 *et seq*. It is important to note that this is a civil taxation case and has little, if anything, to do with the criminal charges filed against the taxpayer. It is also a case in which we are asked to review the decision of an administrative agency of this state. As a result, our standard of review is very different than what it would be in a criminal action.

The parties do not seriously dispute the facts on which the tax assessment is based.

The taxpayer was approached by a police undercover agent. She attempted, on several occasions, to sell the taxpayer marijuana. When her efforts were not successful, she introduced the taxpayer to Detective Tom Spencer of the Wichita Police Department. The taxpayer obviously was unaware of Detective Spencer's status as a police officer. Detective Spencer also urged the taxpayer to buy marijuana. The taxpayer indicated that he was not personally interested in buying or selling drugs but that he knew people who might be. In time, an arrangement was formulated between the parties, whereby the taxpayer would act as a go-between to facilitate the purchase of marijuana by third parties from Detective Spencer.

Detective Spencer met with the taxpayer and gave him a sample of the marijuana. The taxpayer, or his acquaintances, were apparently satisfied with the quality of the product because a purchase was arranged. The taxpayer instructed Detective Spencer to place the marijuana in the automobile of the taxpayer's father, which would be parked at the taxpayer's place of employment. The doors

to the vehicle were to be left unlocked when the marijuana was delivered.

The taxpayer borrowed his father's car and parked it in the pre-arranged location. The taxpayer and Detective Spencer met at a prearranged site, and both men got into the front seat of the ve-hicle. The taxpayer gave Detective Spencer $4,800 in payment for the marijuana. Detective Spencer then got out of the vehicle, say-ing that he had to retrieve the marijuana and deliver it to the tax-payer. The taxpayer became suspicious when Detective Spencer got out of the car; he feared that Detective Spencer was going to "rip him off," so he also got out of the car. The taxpayer and De-tective Spencer were both out of the vehicle when Spencer placed a gym bag full of marijuana in the back seat. Almost immediately and before the taxpayer could get back into the vehicle, he was arrested. At no time was the taxpayer in the vehicle after the ma-rijuana had been placed in the back seat. His arrest appears to have occurred almost simultaneously with the deposit of marijuana in the vehicle in question.

## STANDARD OF REVIEW

This appeal is controlled by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Our scope of review is defined in K.S.A. 77-621. In practical terms, the fol-lowing portion of 77-621(c) is applicable:

"The court shall grant relief only if it determines any one or more of the fol-lowing:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

In the view of the KDR, the possession by the taxpayer was sufficient to trigger an application of the tax. The BOTA disagreed and held that the taxpayer did not have sufficient possession to incur tax liability. On appeal to this court, the KDR argues that the BOTA misapplied the law to the facts of the case. Inasmuch as there is little, if any, dispute as to the facts, we conclude that a de novo review by this court is appropriate. The question we must

determine is the proper application of the law to facts which are agreed upon by the parties. As to that issue, our review is unlimited.

Since this action involves the review by one state agency of the decision of another, it follows that the standard of review for the BOTA over the KDR decision mirrors that of ours over the BOTA decision.

There are also certain presumptions and requirements of deference to expertise that come into the mix. For instance, a rebuttable presumption of validity "attaches to all actions of an administrative agency and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's actions." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989).

The review of a BOTA decision was discussed by our Supreme Court in *In re Tax Appeal of Harbour Brothers Constr. Co.*, 256 Kan. 216, 221-22, 883 P.2d 1194 (1994):

"Interpretation of a statute is a question of law. [Citation omitted.] Special rules apply, however, when considering whether an administrative agency 'erroneously interpreted or applied the law':

'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. . . . [I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review. . . . [However,] [t]he determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts.' [Citation omitted.]

"Deference to an agency's interpretation is especially appropriate when 'the agency is one of special competence and experience.' [Citation omitted.] However, the final construction of a statute always rests with the courts. [Citation omitted.]"

One of the problems we have in the case at bar is that the BOTA would apparently owe deference to the KDR decision, and this court owes deference to the BOTA decision. We are mindful of the various considerations set forth above while resolving the issues on this appeal.

## POSSESSION

K.S.A. 79-5201 through 79-5211 comprise what is commonly

known as the Kansas Drug Tax Act. This Act imposes a tax on "dealers" of marijuana and other controlled substances. The tax rates are set out in K.S.A. 1995 Supp. 79-5202.

There is apparently no question in this case that the taxpayer was a "dealer" in marijuana as that term is defined in K.S.A. 1995 Supp. 79-5201(c) and used elsewhere in the Act. The KDR and the BOTA both concluded the taxpayer was a dealer, and the taxpayer does not seriously challenge that conclusion.

Although the Act has been controversial, it has been subjected to prolonged litigation in which it has been held to be valid and constitutional in all respects. See *State v. Gulledge*, 257 Kan. 915, 896 P.2d 378 (1995); *State v. Berberich*, 248 Kan. 854, 811 P.2d 1192 (1991); *State v. Durrant*, 244 Kan. 522, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989); *State v. Matson*, 14 Kan. App. 2d 632, 798 P.2d 488 (1990), *rev. denied* 249 Kan. 777 (1991). While all of these decisions determined that the Act was valid and constitutional, unfortunately, none of the decisions cited above have defined what sort of possession is required to incur liability for the tax.

The principal issue is whether the taxpayer is liable for the tax under the facts shown. This will depend upon whether the taxpayer had sufficient possession of the marijuana in question to trigger application of the Act.

For our purposes, only two of the statutes which comprise the Act are particularly relevant.

K.S.A. 1995 Supp. 79-5204 provides in relevant part:

"(a) No dealer may possess any marijuana, domestic marijuana plant or controlled substance upon which a tax is imposed pursuant to K.S.A. 79-5202, and amendments thereto, unless the tax has been paid *as evidenced by an official stamp or other indicia.*

. . . .

"(c) When a dealer purchases, acquires, transports, or imports into this state marijuana, domestic marijuana plants or controlled substances on which a tax is imposed by K.S.A. 79-5202, and amendments thereto, and if the indicia evidencing the payment of the tax have not already been affixed, the dealer shall have them permanently affixed on the marijuana, domestic marijuana plant or controlled substance immediately after receiving the substance. Each stamp or other official indicia may be used only once.

"(d) Taxes imposed upon marijuana, domestic marijuana plants or controlled substances by this act are due and payable *immediately upon acquisition or possession in this state by a dealer. Interest on tax liabilities shall accrue at the rate prescribed by subsection (a) of K.S.A. 79-2968, and amendments thereto, from the date the tax was due until paid."* (Emphasis added.)

K.S.A. 79-5208, at the time pertinent to this appeal, read as follows:

"Any dealer violating this act is subject to a penalty of 100% of the tax in addition to the tax imposed by [K.S.A. 79-5202]. In addition to the tax penalty imposed, a dealer distributing *or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a crime and, upon conviction, may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both."* (Emphasis added.)

Both of the statutes quoted above either impose the tax or criminal penalties on "dealers" who are in "possession" of marijuana or other controlled substances. Both the KDR and the BOTA decisions deal with and are based on what the term "possession" means in the tax context.

K.S.A. 1995 Supp. 79-5204(d) provides that the tax is due immediately upon "acquisition or possession." K.S.A. 79-5208 imposes penalties on "dealers" who are "distributing or possessing" marijuana or other controlled substances. Clearly, 79-5204 deals with imposition of the civil tax and penalties, whereas 79-5208 provides for criminal penalties and fines for violations of the Act. Despite their differences in focus, both statutes are part and parcel of the Act.

" '[T]he legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them *consistent, harmonious, and sensible.'* *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989)." (Emphasis added.) *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992).

In order to construe the Act in a harmonious and consistent manner, we conclude that the term "possession" must mean the same thing throughout the Act.

The Director specifically did not address the definition or meaning of the term "acquire" as used in 79-5204(c) and (d). As might

be expected, the BOTA decision also omitted consideration of the term "acquire." We believe that as that term is used in the Act, it has the same general meaning as does the term "possession." If, in fact, a taxpayer does not have the requisite possession to trigger the tax, he or she also has not "acquired" the substance within the meaning of the Act.

The KDR held that, in this case, the taxpayer was not in actual possession of the marijuana. It found, however, that he was in *constructive possession* of the marijuana placed in his car by Detective Spencer. The KDR hearing officer then concluded that constructive possession of the marijuana was sufficient to impose liability for the tax.

The BOTA agreed that the taxpayer was in *constructive possession* of the marijuana but concluded that was not sufficient possession to incur liability under the Act. The BOTA held as follows:

"16. To find that the tax is due and owing in this situation would place a tax on the marijuana before the Taxpayer has the opportunity to perform his duties. It would be possible for anyone to place marijuana in a location nominally under a Taxpayer's control, and then make the Taxpayer immediately liable for the taxes.

"17. 'Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer.' *Fleming Company v. Mc-Donald*, 212 Kan. 11, Syl. ¶ 1, 509 P.2d 1162 (1973); *Equitable Life Assurance Society v. Hobbs*, 154 Kan. 1, Syl. ¶ 1, 114 P.2d 871 (1941). There is a question about the amount of possession necessary. *Constructive possession is not sufficient to trigger an application of the marijuana tax. The operation required in the marijuana tax stamp act is the affixing of the tax stamps on the marijuana. K.S.A. § 79-5204 (1991 Supp.). In this case the Taxpayer did not have the opportunity to affix the stamps. The Taxpayer must have possession of the marijuana sufficient enough to affix the stamps. Constructive possession, a legal fiction, simply does not apply; actual possession is needed. Otherwise, the Taxpayer would be liable whether or not he had the stamps in his pocket. The police action in arresting the Taxpayer may be sufficient to sustain some type of criminal charge, but it is premature to sustain the marijuana tax.*

"18. The presumption of the correctness of the Department's assessment is overcome because the facts show that the Taxpayer was never in actual possession of the marijuana." (Emphasis added.)

We agree with the BOTA. The question does not turn on whether there was actual or constructive possession. In general,

one can conclude that in virtually all instances actual possession of marijuana would result in tax liability. On the other hand, most of the time, constructive possession alone would not be sufficient to trigger liability. We are not, however, willing to say that in no conceivable instance would constructive possession result in tax liability. Under the rule we adopt, constructive possession would rarely be sufficient to trigger the tax, but *rarely* does not mean *never*. It is possible that on some rare occasions constructive possession, along with the other facts shown, may be sufficient, and this must be decided on a case-by-case basis.

We prefer to base our decision on something more substantial than the variety of definitions that we could quote defining actual possession and/or constructive possession. The BOTA concluded that "[i]n this case, the Taxpayer did not have the opportunity to affix the stamps. *The Taxpayer must have possession of the marijuana sufficient enough to affix the stamps.*" (Emphasis added.) We conclude that the BOTA is correct in its reasoning.

K.S.A. 79-5208 imposed criminal liability on "a dealer distributing or possessing marijuana or controlled substances *without affixing the appropriate stamps, labels or other indicia.*" (Emphasis added.) The penalty for being in possession of marijuana *without the stamps affixed*, at the time of the taxpayer's arrest, was imprisonment for not more than 5 years, a fine of not more than $10,000, or both. In 1994, the statute was amended, and, presently, a dealer in possession of marijuana without the stamps affixed is guilty of a severity level 10 felony. See K.S.A. 1995 Supp. 79-5208.

Despite the KDR's arguments to the contrary, the most severe penalties under the Act are for *possession without the stamps affixed*. As we read the statute, a dealer who had purchased the stamps and had them in his back pocket would still be criminally liable if, when arrested, he did not have the stamps affixed.

The penalties imposed by K.S.A. 79-5208 are not for being in simple possession of the marijuana; they are for being in possession of marijuana without the stamps affixed. Under those circumstances, it is clear that in order to be guilty of that crime, one must have had sufficient possession so that he or she had an opportunity to affix the stamps. We doubt that the imposition of criminal lia-

bility would be constitutional if it were based on conduct that gave the violator no opportunity to comply with the law.

We also conclude that the term "possession" cannot mean one thing as used in 79-5208 and another as used in 79-5204. The type of possession sufficient to incur tax liability is the same type of possession sufficient to incur criminal liability. In both those instances, the possession must have been sufficient to allow the individual to have affixed the stamps.

We hold that in order to incur liability for the tax under 79-5204, the taxpayer must have had possession of the marijuana sufficient enough to affix the stamps. In this case, the taxpayer did not have the opportunity to affix the stamps. He was out of the car when the marijuana was placed in the back seat and was arrested before he could get back into his car or even get close to the marijuana. He never had a chance to be where the marijuana was; he never had a chance to touch the marijuana, to test it, or to hide it. If the stamps had been in his back pocket, he never would have had a chance to put them on the marijuana. We agree with the BOTA that the taxpayer was never in sufficient possession of the marijuana to incur tax liability under the Act.

The KDR argues that the taxpayer "acquired" the marijuana even if he did not possess it. This issue was not considered by the BOTA. We are asked to remand this case for a consideration of whether the taxpayer "acquired" the marijuana. We decline to do so.

It is our judgment, and that of the BOTA, that tax liability is not incurred unless and until a taxpayer has had possession sufficient to give him or her an opportunity to comply with the law and affix the stamps. It makes little difference at this juncture if we are talking about "acquiring" the marijuana or coming into "possession" of it. In either instance, the taxpayer must have had the opportunity to affix the stamps. Consequently, a taxpayer has not *acquired* marijuana within the meaning of the Act unless it could be shown that he had sufficient possession of the substance to affix the tax stamps.

Our opinion deals only with civil tax liability under the Act. It should not be construed as attempting to define what elements are

necessary to convict a defendant for criminal possession of marijuana. Those definitions are developed in criminal actions.

We have no problem with the fact that in this case, for instance, the taxpayer was guilty of criminal possession of marijuana and yet did not have sufficient possession of that marijuana to incur liability under the Act. There is no inconsistency of logic in this case; there is simply a fundamental difference between a criminal prosecution and a civil action to recover taxes. That fundamental difference is demonstrated in this opinion.

Affirmed.