(132 P.3d 485)

No. 94,075

STATE OF KANSAS, *Appellee*, v. EDWARD A. SYKES, *Appellant*.

518

Opinion filed April 21, 2006.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before MALONE, P.J., GREEN and BUSER, JJ.

MALONE, J.: Edward A. Sykes appeals his convictions and sentences in two separate cases from Sedgwick County District Court. In 04 CR 781, Sykes was convicted of misdemeanor theft and sentenced to 12 months in the county jail. In 04 CR 877, Sykes was convicted of possession of cocaine with intent to sell after a prior conviction and no drug tax stamp. He received a controlling sentence of 90 months' imprisonment. Sykes claims the district court erred by not granting a jury trial on the misdemeanor theft charge and by denying his motions to appoint new counsel. Sykes also claims the district court erred by failing to suppress his statements to police and in instructing the jury on the tax stamp charge. He further claims there was insufficient evidence to support his conviction of possession of cocaine with intent to sell after a prior conviction. Finally, Sykes raises sentencing issues, including a claim

that the district court erred by overruling Sykes' objection to his criminal history score.

We conclude Sykes was denied his right to a jury trial on the misdemeanor charge, and we reverse his conviction and remand for a new trial in that case. In the felony case, we conclude the district court did not abuse its discretion when it denied Sykes' motions to appoint new counsel. We find no reversible error in 04 CR 877, and Sykes' felony convictions and sentences are affirmed.

*Factual and procedural background*

Misdemeanor Theft (04 CR 781)

On September 18, 2003, Sykes entered a smoke shop and asked for a carton of Marlboros, a carton of Newports, and a carton of Kools. The clerk provided Sykes with a carton each of Marlboros and Newports but had to go to the back of the store to get the carton of Kools. When he returned, Sykes and the two cartons of cigarettes the clerk had placed on the counter were gone. The clerk told the police he saw Sykes running from the store with the two cartons of cigarettes.

Sykes claimed he had been socializing with a couple he met at his motel earlier in the evening. The couple drove him to the smoke shop. The woman asked Sykes to go into the smoke shop and ask for several cartons of cigarettes while she went to the liquor store next door. Sykes asked for two cartons of cigarettes and also asked the clerk for a carton of Kools. According to Sykes, when the clerk turned his back to get the Kools, the woman rushed into the smoke shop, grabbed the cartons on the counter, ran out of the shop, and jumped into the back seat of the car driven by her husband. Sykes followed the woman out of the shop and ran after the car as it drove off. At first, the couple would not let Sykes in the car, but they eventually pulled over in a nearby Kwik Shop parking lot and let him in the car.

Sykes was arrested later that evening, and he was subsequently charged with theft, a class A misdemeanor. He was arraigned on the misdemeanor charge, received an appointed attorney, and notified of the next court date. Sykes did not file a written request for a jury trial in the misdemeanor case.

A bench trial was scheduled on August 25, 2004. Prior to the trial, the district court held a hearing to address Sykes' motion to replace his appointed attorney, Casey Cotton. During the hearing, Sykes informed the court that he wanted a jury trial, but his attorney had not requested one. Cotton explained he had only found out recently that Sykes now wanted a jury trial. After hearing from both Sykes and Cotton, the district court denied Sykes' motion to appoint new counsel. The district court did not address Sykes' request for a jury trial. After a bench trial, Sykes was convicted of misdemeanor theft and sentenced to 12 months in the county jail.

Felony Drug Charges (04 CR 877)

On December 30, 2003, Detective Jason Miller was driving in the area of 11th and Topeka in Wichita investigating a report of a possible methamphetamine lab in the area. Miller was in plain clothes in an unmarked car with the windows down. He noticed Sykes on the corner yelling and waving his arms, apparently trying to wave Miller over to the curb. Miller continued to drive around the block. When he came back, he observed Sykes waving a red car over to the curb. Miller also pulled to the curb directly behind the red car. The driver of the red car rolled down the window. Sykes approached the car and extended his right hand toward the driver. Miller saw what appeared to be a plastic baggie with four off-white rocks inside. Miller contacted the patrol station and requested that a uniformed officer be sent to the area.

Officer Robert Bachman responded, and Miller relayed to Bachman what he had seen. Bachman approached Sykes, asked to pat him down, and then decided to search his pockets. Bachman recovered two plastic bags containing what appeared to be crack cocaine, and Bachman placed Sykes under arrest. As Bachman and another officer were preparing to conduct a field test on the rocks, Sykes motioned to Bachman and indicated he wanted to tell him something. Sykes told Bachman the rocks would test positive as cocaine and told him he had planned to sell the cocaine to make some money because he was out of work. Bachman read Sykes the *Miranda* warnings, and Sykes agreed to continue talking to the officer. Sykes told Bachman where he had obtained the drugs and

told him he was on probation from a 1996 conviction for selling cocaine.

Sykes was charged with possession of cocaine with intent to sell after a prior conviction and failure to affix a drug tax stamp. Sykes filed a motion in both his misdemeanor and felony cases to replace his appointed attorney, Cotton. As previously discussed, the district court addressed the motion on August 25, 2004, and denied Sykes' request for new counsel. A week after the bench trial, Sykes filed a second motion to replace his appointed counsel. Sykes claimed Cotton insulted him, attempted to persuade him into taking a plea, abandoned him during the adversarial process, failed to file motions, and misled him into a bench trial in the misdemeanor case when Sykes wanted a jury trial.

On September 24, 2004, the district court addressed Sykes' second motion to appoint counsel and heard from both Sykes and Cotton. The court questioned Sykes about the various problems he claimed to have with Cotton. Sykes told the court he was attempting to hire his own attorney and asked the court to grant him a continuance in the felony case if the court was not going to appoint new counsel. The district court again denied Sykes' motion to appoint new counsel, but the court did grant him a continuance to hire counsel of his choice. Sykes never hired a new attorney.

Prior to trial on the felony charges, Sykes filed a motion to suppress the evidence recovered as a result of Bachman's search of Sykes' pockets. Sykes also argued that his pre-*Miranda* statements to Bachman should be suppressed. The district court denied the motion to suppress. The district court found Bachman had probable cause to search Sykes and concluded Sykes' pre-*Miranda* statements to Bachman were voluntary and not the result of an interrogation.

Sykes' felony case proceeded to a jury trial and he was convicted as charged. He received a controlling sentence of 90 months' imprisonment. Sykes filed a timely notice of appeal. Additional facts will be provided.

### Jury trial on misdemeanor charge

Sykes claims the district court violated his constitutional right to

a jury trial when it proceeded with a bench trial on his misdemeanor theft charge even though Sykes had not knowingly and voluntarily waived a jury trial. The facts are undisputed. Under these circumstances, the question of whether Sykes knowingly and voluntarily waived his right to a jury trial is reviewed de novo. See *State v. Carter*, 278 Kan. 74, 77-78, 91 P.3d 1162 (2004).

In case 04 CR 781, Sykes was charged with theft, a class A misdemeanor, which carried a maximum sentence of 12 months' confinement in the county jail. Sykes did not file a written request for a jury trial. However, on the morning of the scheduled bench trial, Sykes made it clear to the district court that he wanted to proceed with a jury trial. The district court never addressed this request.

A defendant charged with a misdemeanor has a statutory right to a jury trial pursuant to K.S.A. 2005 Supp. 22-3404(1), which provides:

"The trial of misdemeanor cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after first notice of trial assignment is given to the defendant or such defendant's counsel. The time requirement provided in this subsection regarding when a jury trial shall be requested may be waived in the discretion of the court upon a finding that imposing such time requirement would cause undue hardship or prejudice to the defendant."

Under this provision, the defendant in a misdemeanor case should file a written request for a jury trial not later than 7 days after receiving notice of a bench trial assignment. This notice is usually received at the misdemeanor arraignment. The time requirement for requesting a jury trial in a misdemeanor case may be waived at the court's discretion to prevent hardship or prejudice to the defendant. Sykes never exercised his statutory right to request a jury trial.

In addition to the statutory right to a jury trial, the defendant in a misdemeanor case also has a constitutional right to a jury trial found in the Sixth and Fourteenth Amendments to the United States Constitution and § 5 of the Kansas Constitution Bill of Rights. The constitutional right to a jury trial is triggered when the defendant is facing potential imprisonment for the offense exceeding 6 months.

"Where the potential imprisonment for the offense charged exceeds six months, a defendant standing trial for a misdemeanor or a traffic offense has a right to a jury trial, regardless of whether it is requested within seven days after notification of a trial setting. In order to waive the right to a jury trial under these circumstances, defendant must first be advised by the court of his or her right to a jury trial, and defendant must personally waive that right in writing or in open court." *State v. Jones*, 19 Kan. App. 2d 982, 984, 879 P.2d 1141 (1994).

*Jones* followed the Kansas Supreme Court's decision in *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 (1975). In *Irving*, the defendant was convicted by a magistrate of a class A misdemeanor and appealed to district court. Prior to trial in district court, the defendant appeared in court with his attorney and requested a jury trial. The district court found the defendant had waived his right to a jury trial by not demanding one within 48 hours of the appeal from the magistrate. The defendant was convicted in district court following a bench trial.

The Kansas Supreme Court reversed and noted the defendant had a constitutional right to a jury trial for any offense where imprisonment for more than 6 months was authorized. 216 Kan. at 589. The court found that since the right to trial by jury is constitutionally preserved, waiver of the right should be strictly construed to afford a defendant every possible opportunity to receive a fair and impartial trial by jury. The *Irving* court concluded:

"In accord with this position we hold that in order for a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record." 216 Kan. at 590.

Although Sykes did not timely exercise his statutory right to request a jury trial on the misdemeanor theft charge, this did not abrogate his constitutional right to a jury trial since he was facing imprisonment for more than 6 months. In this context, incarceration in a county jail qualifies as imprisonment. The district court should have obtained a knowing waiver from Sykes, either in writing or in open court, of his constitutional right to a jury trial. The State concedes the record does not indicate Sykes waived his right to a jury trial. In fact, Sykes informed the district court he wanted a jury trial immediately before the bench trial commenced. Sykes

is therefore entitled to a new trial on the misdemeanor theft charge where he may exercise or waive his right to a jury trial.

Sykes also claims the district court erred by denying his motions to appoint new counsel, and we will address this issue as it relates to the felony case. Finally, Sykes claims on appeal that the district court erred in failing to suppress evidence in the misdemeanor case. Sykes acknowledges he did not file a motion to suppress the evidence prior to the trial, and he did not object when the evidence was introduced at trial. This issue is not properly preserved for this appeal. See *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003).

### *Motions to appoint new counsel*

We will now address Sykes' claim that the district court erred by denying his motions for new counsel. Sykes claims he had significant communication problems with his court-appointed attorney, Cotton, during the course of both his misdemeanor and felony cases. He maintains these communication problems began when Cotton failed to inquire if Sykes wanted a jury trial in his misdemeanor case. Sykes filed two motions asking the district court to replace his court-appointed attorney. On appeal, he argues the district court erred when it failed to replace his counsel.

"A trial court's refusal to appoint new trial counsel is reviewed using an abuse of discretion standard. Judicial discretion is abused when the district court's action is arbitrary, fanciful, or unreasonable. The test for abuse of judicial discretion is whether any reasonable person would take the view adopted by the district court. [Citation omitted.]

"To warrant the appointment of new trial counsel, a defendant must show 'justifiable dissatisfaction' with his or her appointed counsel. 'Justifiable dissatisfaction' may be demonstrated by showing a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the defendant and his or her appointed attorney. [Citation omitted.]" *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006).

Sykes filed his first motion for appointment of new counsel on the day of his misdemeanor trial. Although the written motion was not made part of the record, it appears that Sykes gave the written motion to the district court and supplemented it with oral argument. Sykes told the district court Cotton failed to meet with him

in the early stages of his case and when he did finally meet with him, Cotton wanted to discuss a plea agreement rather than formulating a defense. Sykes also maintained Cotton failed to visit him at the jail, failed to discuss the facts of his case with him, and failed to locate potential witnesses identified by Sykes. Sykes also informed the district court that he did not want a bench trial on his misdemeanor charge.

In response, Cotton explained he had met with Sykes "on no less than four occasions." Cotton indicated Sykes' trial had already been rescheduled several times due in part to Cotton's efforts to locate witnesses Sykes had identified. All that aside, in Cotton's opinion, he and Sykes had a "material and complete breakdown in communications." Cotton told the court, "Sykes does not trust me, is not open with me, and at this point I feel that further representation of him by me would in all likelihood be ineffective, due to the fact that we can't communicate."

The district court inquired who was responsible for the lack of communication between Cotton and Sykes. Before Cotton could finish answering the court's question, Sykes interrupted and said he and Cotton were both at fault for the lack of communication. Cotton further explained that part of the miscommunication stemmed from his misunderstanding that Sykes wanted a jury trial. Cotton admitted he had not filed a motion requesting a jury trial, explaining Sykes had not told him he wanted a jury trial until the day before the bench trial was scheduled. Nevertheless, Cotton indicated he was willing to try Sykes' case.

The court commented that it believed the conflict stemmed from Sykes' misunderstanding of Cotton's responsibilities. The court explained to Sykes that often a defendant misunderstands that it is an attorney's responsibility to advise their clients on whether they should proceed to trial or enter a plea agreement. The court commented that sometimes that advice is not what the defendant wants to hear.

Upon hearing this, Sykes responded that he did not trust Cotton because Cotton told him he had "some ethical situations" and would prefer it if another attorney was appointed to represent Sykes. The court asked Cotton whether another attorney under the

same circumstances would be able to represent Sykes without facing the same ethical situation. Cotton replied by informing the court that he did not have a direct conflict in representing Sykes. He told the court there was a way he could continue to represent Sykes and not violate any ethics code, but it was not a way he preferred.

Sykes responded that he had been represented by an attorney from the public defender's office in the past who had represented him with more assertiveness and enthusiasm than Cotton. Sykes suggested that in his past experience, his defense attorney had violated ethics codes to benefit him. He said:

"She seen what was going on in the operations of the court, and she did an unethical situation and put herself in jeopardy. This is how much enthusiasm she had. This individual is telling me on a continuous basis that this ethical situation that he has or sees or has foreseen that he cannot go forward in a trial if it makes him do that, and I don't have a problem with that. But sometimes I have seen it from my own eyes that you may have to do some things like that to save your client maybe down the road."

The district court noted that Cotton indicated he was willing to try Sykes' case, and he did not have an ethical conflict that could not be cured. The court informed Sykes he was not entitled to an unethical attorney, even if he wanted one, who would be more aggressive in the case. The district court denied Sykes' motion to appoint new counsel and assigned the misdemeanor case for a bench trial.

Sykes filed a second motion to appoint new counsel after his bench trial for misdemeanor theft. In the second motion, Sykes claimed Cotton insulted him, attempted to influence him, abandoned him during the adversarial process by suggesting a guilty plea, and misled him into proceeding with a bench trial rather than a jury trial on his misdemeanor theft charge.

The second motion for new counsel was heard by a different judge. During the hearing, Sykes rehashed most of his complaints about Cotton. Sykes told the court that Cotton failed to visit him at the jail when Sykes requested a visit. He complained there had not been any communication between himself and Cotton concerning his felony case. He also complained that Cotton had pro-

ceeded with a bench trial in the misdemeanor case even though Sykes had wanted a jury trial. Sykes told the court he was planning to hire his own attorney and requested time to do so.

Cotton explained that Sykes had not informed him that he wanted a jury trial until the day before his bench trial was scheduled. Cotton also informed the court that at one point he was faced with an ethics quandary in representing Sykes on the misdemeanor charge, but Cotton explained this was resolved and he was able to represent Sykes during his misdemeanor trial. Cotton told the court he was willing to continue to represent Sykes in the felony case but felt that the two had "a significant communication problem." When the court asked whether Cotton thought the situation would be different if Sykes had new counsel, Cotton responded, "[M]aybe he [Sykes] would be able to develop a modicum of trust [with new counsel] he doesn't have with me. Maybe he won't. I don't know the answer to that."

The district court denied Sykes' motion but granted a 3-week continuance so that Sykes could hire his own counsel. However, the district court made it clear that if Sykes did not hire new counsel, Sykes would need to proceed with Cotton and another continuance would not be granted. Sykes did not hire new counsel. Cotton represented Sykes during his jury trial on the felony charges.

On appeal, Sykes focuses on Cotton's failure to ask Sykes if he wanted a jury trial on his misdemeanor charge. He argues the district court had a duty to inquire into the communication problems that resulted from Cotton's failure to request a jury trial in the misdemeanor case. He claims the district court abused its discretion when it determined Sykes was not entitled to new appointed counsel.

In *State v. Vann*, 280 Kan. 782, 127 P.3d 307 (2006), the defendant was charged with attempted first-degree murder, attempted second-degree murder, unlawful possession of a firearm, criminal damage to property, and three counts of aggravated assault. Prior to trial, the defendant filed a motion to discharge his appointed counsel, alleging a conflict of interest and a breakdown in communication. The defendant also filed a motion to proceed pro se. The district court forwarded the motions to defense coun-

sel, but the district court did not address the motions and never inquired into the alleged conflict of interest between the defendant and his attorney. The defendant was found guilty by a jury.

On appeal, the Kansas Supreme Court reversed the defendant's convictions. 280 Kan. at 790-92, 794-95. The court held the district court should have inquired about the alleged conflict of interest between the defendant and appointed counsel. The court stated:

"It is the task of the district judge to insure that a defendant's Sixth Amendment right to counsel is honored. Where a trial court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further. Likewise, where the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated. A trial court abuses its discretion if it fails to inquire further after becoming aware of a potential conflict between an attorney and his or her client." 280 Kan. 782, Syl. ¶ 1.

Sykes' case is distinguishable from *Vann*. Here, the district court certainly did not ignore Sykes' request for a new attorney. The district court held two separate hearings on Sykes' motions and conducted a detailed inquiry concerning Sykes' problems with his attorney. The district court heard from both Sykes and his counsel and ultimately determined that counsel did not have a conflict in representing Sykes at trial.

In *McGee*, the defendant was charged with first-degree premeditated murder. Prior to trial, the defendant filed a motion for appointment of new trial counsel. In the motion, the defendant alleged his appointed attorney never came to visit him in jail and there was a breakdown in communication with his attorney. The defendant claimed the attorney was making no effort to defend him and had lied to him about the case. At the hearing, defense counsel informed the court that he had visited his client in jail on more than one occasion. Defense counsel stated he believed he could adequately represent the defendant at trial. The district court denied the motion.

On appeal, the Kansas Supreme Court found there was no abuse of discretion in denying the defendant's motion for new counsel. 280 Kan. at 896-97. The court noted there was a disagreement

between the defendant and his appointed counsel, but the disagreement did not rise to the level of a conflict of interest. The court concluded: "McGee has failed to point to any facts that demonstrate an actual conflict of interest between himself and his trial counsel. Accordingly, the district court did not abuse its discretion when it concluded that there was no conflict of interest between McGee and his counsel." 280 Kan. at 896.

Sykes' case is similar to *McGee.* In both cases, the defendant alleged a breakdown in communication with appointed counsel. In *McGee,* defense counsel denied the defendant's complaints. Likewise in this case, Cotton denied most of the complaints Sykes reported to the court. Cotton informed the court he had met with Sykes at the jail on several occasions, and he had expended considerable effort in locating witnesses Sykes had identified. Cotton also explained the only reason he had not requested a jury trial on the misdemeanor charge was because Sykes had not requested one until the day before trial. However, there is one significant difference between Sykes' case and *McGee.* In Sykes' case, Cotton at one point admitted there was a "complete breakdown in communications" between them.

Returning to our standard of review, to warrant the appointment of new counsel, a defendant must show justifiable dissatisfaction with his or her appointed counsel. Justifiable dissatisfaction may be demonstrated by showing a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the defendant and his or her appointed attorney. *McGee,* 280 Kan. at 894. Here, the record does not support a conflict of interest between Cotton and Sykes. At one point Cotton indicated he was faced with an ethical problem in representing Sykes in the misdemeanor case. However, Cotton informed the court he knew how to resolve the problem and he could represent Sykes at trial in the misdemeanor case.

The real issue is whether the record supports an irreconcilable conflict or a complete breakdown in communications between Cotton and Sykes. In the first hearing on Sykes' motion for new counsel, Cotton acknowledged Sykes' lack of trust and a significant communication problem with his client. However, in the same hearing,

Cotton informed the court he had met with Sykes at the jail on several occasions, and he had expended considerable effort in locating witnesses Sykes had identified. This implies that Sykes and Cotton were communicating about the case. Cotton informed the court he had resolved the ethical dilemma and he was willing to represent Sykes at trial on the misdemeanor charge. In the second hearing on Sykes' motion for new counsel, Cotton again told the court he was willing to represent Sykes and he was unsure if the appointment of new counsel would improve the situation.

Sykes is unable to point to any fact in the record to support the assertion of a complete breakdown in communications with his counsel, other than the miscommunication about whether Sykes wanted a jury trial in the misdemeanor case. As far as the felony case is concerned, the record reflects a high level of advocacy displayed by Cotton on Sykes' behalf. Cotton filed a motion to suppress the evidence and adequately represented Sykes at the hearing on the motion. At trial, Cotton aggressively cross-examined the State's witnesses. Sykes testified on his own behalf and responded to a detailed direct examination by Cotton. Sykes testified that he was at the intersection of 11th and Topeka on December 30, 2003, on his way to visit a friend, but he denied selling cocaine as the State alleged. Cotton called two additional defense witnesses to corroborate Sykes' testimony. Cotton effectively presented Sykes' theory of defense to the jury, despite overwhelming evidence of Sykes' guilt presented by the State. He could not have possibly represented Sykes in such a manner without communicating with his client. Cotton's performance in representing Sykes belies the assertion of a "complete breakdown in communications" between them.

Of course, the district court did not have the benefit of hindsight when it denied Sykes' request for new counsel. Nevertheless, the district court had received mixed signals from Sykes and Cotton regarding whether the communications problem between them was irreconcilable. Although at one point Cotton agreed there was a "complete breakdown in communications," the district court was not obligated to accept this assertion at face value without further investigation. Here, the district court thoroughly explored Sykes'

complaints and ultimately concluded Cotton could adequately represent Sykes at trial. There is evidence in the record to support this determination.

"The test for judicial abuse of discretion is whether any reasonable person would take the view adopted by the district court." *McGee,* 280 Kan. at 894. Although this case may be closer than others, we are unable to conclude the district court abused its discretion by denying Sykes' motions to appoint new counsel. Sykes failed to show a justifiable dissatisfaction with his appointed attorney to warrant the appointment of new counsel.

### *Motion to suppress Sykes' statements to police*

Next, Sykes claims the district court erred by failing to suppress his pre-*Miranda* statements to the police made during his arrest in the drug case. He argues his statements were inadmissible because he made them while in custody and without the benefit of *Miranda* warnings. In district court, Sykes also attempted to suppress the evidence seized as a result of the search of his pockets. However, Sykes does not raise this issue on appeal. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Holmes,* 278 Kan. 603, 622, 102 P.3d 406 (2004).

" 'In reviewing a district court's decision regarding suppression, [an appellate] court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. [Citation omitted.] [The appellate] court does not reweigh evidence, pass on credibility of witnesses, or resolve conflicts in the evidence.' [Citations omitted.]" *State v. Swanigan,* 279 Kan. 18, 23, 106 P.3d 39 (2005).

Here, after a pat-down search and his previous observations, Bachman searched Sykes' pockets and recovered two plastic bags containing what appeared to be crack cocaine, and Bachman placed Sykes under arrest. As Bachman and another officer were preparing to conduct a field test on the rocks, Sykes motioned to Bachman and indicated he wanted to tell him something. Sykes told Bachman the rocks would test positive as cocaine and told him he had planned to sell the cocaine to make some money because he was out of work. After these statements, Bachman read Sykes the *Miranda* warnings. After receiving the warnings, Sykes told

Bachman where he had obtained the drugs and he also told him about his prior conviction.

Prior to trial, Sykes moved to suppress the statements he made to Bachman prior to receiving the *Miranda* warnings. The district court denied the motion, finding there was no interrogation since Sykes had initiated the conversation with Bachman.

On appeal, Sykes argues Bachman had a duty to give Sykes the *Miranda* warnings after Sykes told him the rocks in the plastic bag would test positive for cocaine. Consequently, Sykes argues his statements about being out of work and trying to sell the drugs to earn some money should have been suppressed as involuntary statements made during a custodial interrogation.

" ' "It is well established that volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the *Miranda* holding. [Citations omitted.] Moreover, an accused's statement may be found to be voluntary and spontaneous and, thus, admissible even though it is made after the accused is arrested and in custody." ' [Citations omitted.]" *State v. Lackey*, 280 Kan. 190, 225, 120 P.3d 332 (2005).

Aside from express questioning, interrogation can also include other words and actions on the part of the police that they reasonably know are likely to elicit an incriminating response from the suspect. *Lackey*, 280 Kan. at 224. In this case, however, Bachman did nothing that could reasonably be construed as an attempt to elicit incriminating statements from Sykes. Sykes called Bachman over and began talking without any prompting from Bachman.

A suspect's privilege against self-incrimination does not impose a duty upon police officers to prevent the suspect from making incriminating statements. Instead, the *Miranda* warnings were designed to safeguard suspects against coercive interrogation tactics and are required when a suspect is in custody and subject to " 'express questioning or its functional equivalent.' " *Lackey*, 280 Kan. at 224. Here, Sykes' statements were voluntary and there was no interrogation. Bachman was not required to interrupt Sykes with *Miranda* warnings to prevent him from making further incriminating statements. The district court did not err when it denied Sykes' motion to suppress his statements to the police.

*Jury instructions on drug tax stamp charge*

Sykes claims the district court erred by failing to instruct the jury that in order to find him guilty of a drug tax stamp violation, the jury had to find that Sykes possessed the cocaine for a sufficient length of time to acquire a stamp. Sykes failed to request such an instruction at trial. " 'It is well established that [an appellate] court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omission.'* [Citation omitted.]" *State v. Pabst,* 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citation omitted.]" *State v. Shirley,* 277 Kan. 659, 666, 89 P.3d 649 (2004).

The district court instructed the jury on the drug tax stamp charge as follows:

"The defendant is charged in Count Two with the crime of possession of cocaine without Kansas tax stamps affixed. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant knowingly possessed more than 1 gram of cocaine without affixing official Kansas tax stamps or other labels showing that the tax has been paid; and

"2. That this act occurred on or about the 30th day of December, 2003, in Sedgwick County, Kansas."

Sykes now claims this instruction was deficient. He relies on *State v. Edwards,* 27 Kan. App. 2d 754, 9 P.3d 568 (2000), and *In re Burrell,* 22 Kan. App. 2d 109, 912 P.2d 187, *rev. denied* 260 Kan. 993 (1996). In *Burrell,* the court addressed whether a taxpayer had sufficient possession of marijuana to trigger the application of the Kansas Drug Tax Act, K.S.A. 79-5201 *et seq.* The court held that in order to incur tax liability under the Kansas Drug Tax Act, a taxpayer must have had sufficient possession of the marijuana so that he or she had an opportunity to affix the tax stamps. 22 Kan. App. 2d at 116-17.

In *Edwards,* the court applied *Burrell* to a criminal case. The court held that in order for a defendant to be found guilty of a tax

stamp violation under K.S.A. 79-5208, the jury must be instructed that the defendant was in possession of the controlled substance a sufficient time to have affixed the drug stamps. 27 Kan. App. 2d at 761-63.

The ruling in *Edwards* was specifically and categorically rejected in *State v. Alvarez*, 29 Kan. App. 2d 368, 372, 28 P.3d 404, *rev. denied* 272 Kan. 1419 (2001). The *Alvarez* court stated:

"Significantly, the *Edwards* court failed to mention K.S.A. 79-5204(c), which requires that a dealer affix a drug tax stamp 'immediately after receiving the substance.' Rather than applying a broad test to determine whether a dealer was in possession sufficient to affix a drug tax stamp, the *Edwards* court could have relied on K.S.A. 79-5204(c). 'It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.]' *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998)." *Alvarez*, 29 Kan. App. 2d at 372.

The *Alvarez* court went on to hold:

"The legislature's use of 'immediately after receiving the substance' to establish when a drug tax stamp must be affixed to a controlled substance is not ambiguous. As a result, we refuse to read the statute as allowing for a grace period to purchase and affix a drug tax stamp. The tax is due and payable, and the tax stamp must be affixed, *immediately* upon possession." 29 Kan. App. 2d at 372.

Also, in *State v. Curry*, 29 Kan. App. 2d 392, Syl. ¶ 3, 28 P.3d 1019, *rev. denied* 272 Kan. 1420 (2001), the court held:

"Where the evidence will support a jury finding that a defendant had actual possession of a controlled substance or possession with sufficient control to allow any opportunity to immediately affix drug tax stamps to the drugs, it is not clearly erroneous for the district court to fail to give an instruction, *sua sponte*, requiring the jury to find defendant had sufficient possession of the drug to allow defendant an opportunity to affix the drug tax stamps."

We find the court's reasoning in *Alvarez* and *Curry* more persuasive than the court's reasoning in *Edwards*. K.S.A. 79-5204(c) and (d) require a dealer to affix a drug tax stamp immediately upon possession of the controlled substance. Here, Sykes had been under police observation for several minutes prior to his arrest for possessing cocaine. He had an opportunity to immediately affix tax stamps to the controlled substance. Under these circumstances, the district court was not required to instruct the jury that in order to

find Sykes guilty of a tax stamp violation, the jury had to find that Sykes possessed the cocaine for a sufficient length of time to acquire a stamp. The district court's jury instructions on the drug tax stamp charge were not clearly erroneous.

## Sufficiency of the evidence

Sykes claims there was insufficient evidence to convict him of possession of cocaine with the intent to sell after a prior conviction. Specifically, Sykes argues the State failed to present evidence at trial of his prior conviction of sale of cocaine. In this case, the State only offered evidence of Sykes' prior conviction at sentencing in order to establish Sykes' conviction as a drug severity level 2 offense.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

In *State v. Loudermilk*, 221 Kan. 157, 159-60, 557 P.2d 1229 (1976), the defendant was charged with possession of heroin after a prior conviction. The court held the defendant's prior conviction of possession of narcotics was not an element of the crime charged but served only to establish the class of the felony in order to enhance the punishment. The court determined that proof of the prior conviction should only be offered at sentencing. See also *State v. Rome*, 269 Kan. 47, 52, 5 P.3d 515 (2000) (prior convictions under a self-contained habitual criminal statute are not elements of the offense charged and are pertinent only to the sentence that will be rendered in the event of conviction).

Here, Sykes' prior conviction of sale of cocaine was not an element of the crime charged which the State was required to prove at trial. The State was only required to prove the prior conviction at sentencing in order to enhance the punishment for the new offense. Therefore, there was sufficient evidence at trial to support Sykes' conviction.

## Cumulative error

Sykes claims cumulative trial errors denied him a fair trial in both his misdemeanor and felony cases.

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' [Citation omitted.]" *State v. Plaskett*, 271 Kan. 995, 1022, 27 P.3d 890 (2001).

We have already determined Sykes is entitled to a new trial on the misdemeanor theft charge. As for Sykes' felony trial, we find there was no cumulative error sufficient to deny Sykes a fair trial. See *State v. Deiterman*, 271 Kan. 975, 992, 29 P.3d 411 (2001) (if no error is found in the defendant's case, the defendant's claim of cumulative error must likewise fail).

## Sentencing issues

Sykes claims the State failed to prove his criminal history after he objected to his criminal history score at sentencing. Sykes' presentence investigation (PSI) report disclosed 37 prior convictions, including at least three residential burglaries. Sykes made a general objection to his criminal history at sentencing, but he did not specifically deny the existence of any prior convictions. The district court noted the objection but found Sykes' criminal history category was "A" based on the PSI.

When a defendant has objected to his or her criminal history, the State has the burden to prove the criminal history by a preponderance of the evidence. K.S.A. 2005 Supp. 21-4715(a). Determining whether Sykes' objection was sufficient to shift the burden of proof to the State involves statutory interpretation. Interpretation of a statute is a question of law, and an appellate court's review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

K.S.A. 2005 Supp. 21-4715 provides:

"(a) The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.

"(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.

"(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with *written notice* of any error in the proposed criminal history worksheet. *Such notice shall specify the exact nature of the alleged error.* The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence." (Emphasis added.)

Sykes' objection to his criminal history was insufficient to shift the burden of proof to the State for two reasons. First, Sykes failed to provide written notice of his objection to the State. Second, and more importantly, Sykes failed to specify the exact nature of the alleged error he was claiming.

In addressing his criminal history at sentencing, Sykes claimed that his 1996 conviction for selling cocaine within 1,000 feet of a school was a matter of entrapment. He further stated he did not even know there was a school in the area. Sykes also complained that the burglary charges he pled guilty to in 1987 should have been possession of stolen property, but he was ignorant of the law when he entered the plea agreements.

Sykes made no specific objection *to the existence* of any of the prior convictions in his criminal history. He was primarily disagreeing with the law as it applied to some of his prior crimes. Under the circumstances, Sykes' objection was not specific enough to require the State to present additional evidence proving the existence of Sykes' prior convictions.

Finally, Sykes claims his sentence was unconstitutional because the existence of his prior convictions was not proved to a jury beyond a reasonable doubt, citing *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). He recognizes this issue has been decided adversely to him by the Kansas Supreme Court in *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002), but he argues *Ivory* was wrongly decided. "This court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication that the court is departing from its previous position.

[Citation omitted.]" *State v. Maybin*, 27 Kan. App. 2d 189, 205, 2 P.3d 179, *rev. denied* 269 Kan. 938 (2000). There is no indication that the Kansas Supreme Court is departing from its prior decision in *Ivory*. The district court did not violate Sykes' constitutional rights by basing his sentence on the existence of prior convictions not proved to a jury beyond a reasonable doubt.

In summary, Sykes was denied a right to a jury trial on the misdemeanor theft charge. His conviction in that case is reversed and remanded for a new trial. We find no reversible error in 04 CR 877 on the drug charges, and Sykes' felony convictions and sentences are affirmed.

Affirmed in part, reversed in part, and remanded.